**Frank PROSCELLE, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–570.**

United States Court of Veterans Appeals.

Submitted June 28, 1991.

Decided July 24, 1992.

Frank Proscelle, pro se.

Robert E. Coy, Acting General Counsel, Barry M. Tapp, Asst. General Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and John D. Lindsay, Jr., were on the pleadings for appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and STEINBERG, Associate Judges.

STEINBERG, Associate Judge:

The pro se appellant, veteran Frank Proscelle, appeals from a May 31, 1990, decision of the Board of Veterans' Appeals (BVA or Board) which denied him an increased rating for the service-connected residuals, currently rated at zero-percent disabling, of a fracture of the right maxilla. On appeal, the veteran asserts that the Department of Veterans Affairs (formerly Veterans' Administration) (VA) improperly

failed to conduct a physical examination to evaluate the severity of his service-connected disability. The Court agrees, and the case will be remanded to the Board with instructions.

## I. FACTS

The veteran served on active duty in the Navy from September 13, 1955, to November 22, 1958. R. at 7. According to a July 16, 1971, rating decision by a VA Regional Office (RO), the veteran's service medical records indicate that he suffered a fracture of the right maxilla in service on June 28, 1956. R. at 8. In that rating decision, the RO granted the veteran service connection for residuals of that fracture and assigned a zero-percent rating for the condition. *Ibid.*

It appears from the record that the veteran submitted claims at some point in 1985 or earlier for an increased rating for his service-connected condition and for service-connected disability compensation for a nervous disorder claimed to have proximately resulted from that service-connected condition. R. at 10. In a January 20, 1987, decision, the BVA denied the claim for an increased rating. R. at 13. Although the Board noted that the veteran had filed a claim for service connection for a nervous disorder, it did not decide that claim.

In 1989, the veteran submitted another claim for an increase in his disability rating. Pursuant to the veteran's request, VA obtained copies of records of his outpatient treatment at a VA medical center. The records reflect treatment in 1987 for chronic paranoid schizophrenia, which was reported to have had its onset 20 years earlier. R. at 16–17. The records also reflect treatment in 1988 for back pain, apparently attributed to a motor vehicle accident (the record refers to "MVA"). R. at 21. In his November 20, 1989, VA Form 1–9, Appeal to the BVA, the veteran stated: "In 1989 I believe my disability has increased in severity [such] that I rate a higher disability". R. at 32. He also stated that he was unemployed and requested that VA consider unemployability as a ba-

sis for his claim. *Ibid.* At a personal hearing at the RO on January 9, 1990, he testified under oath that the service-connected maxillary fracture had caused a nervous condition which had caused him problems in retaining employment. R. at 36.

In its May 31, 1990, decision denying a compensable rating for the veteran's service-connected condition, the Board stated: "The evidence of record does not show ... impairment [of motion] or loss [of masticatory function] at present. Treatment records from 1987 to 1988 show no problems whatsoever with the veteran's right maxilla." *Frank Proscelle*, BVA 89–00937, at 4 (May 31, 1990).

## II. ANALYSIS

On consideration of the appellant's brief, the motion of the Secretary of Veterans Affairs (Secretary) for summary affirmance, and the record on appeal, the Court concludes that the BVA erred in failing to assist the veteran in developing the facts pertinent to his claim for an increased rating for his service-connected condition, and in failing to adjudicate the veteran's claims for service connection of a psychiatric condition as secondary to his service-connected condition and for a total disability rating based on unemployability.

### A. Increased Rating for Residuals of Maxillary Fracture

■ The Court notes that, although in 1987 the BVA had denied the veteran's claim for an increased rating for the service-connected residuals of the maxillary fracture, his claim for an increased rating presently on appeal is not a reopened claim subject to the requirement that there be "new and material" evidence to justify reopening under 38 U.S.C. § 5108 (formerly § 3008), *cf. Manio v. Derwinski*, 1 Vet. App. 140, 145–46 (1991); *Jones (McArthur) v. Derwinski*, 1 Vet.App. 210, 213–15 (1991), because the veteran claims that his service-connected disability has undergone an increase in severity *since* that prior claim. R. at 32. The current claim is thus a new claim. It is not subject to the provisions of 38 U.S.C. §§ 7104(b) (formerly

§ 4004) and 5108 prohibiting reopening of previously disallowed claims except upon new and material evidence.

█ In order to trigger the Secretary's duty to assist a VA claimant under 38 U.S.C. § 5107(a) (formerly § 3007), the claimant's evidentiary burden is to submit "evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." *See Moore (Howard) v. Derwinski*, 1 Vet.App. 401, 405 (1991); *Murphy (Bonnie) v. Derwinski*, 1 Vet.App. 78, 81 (1990). "A well grounded claim is a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [§ 5107(a)]." *Moore, supra* (quoting *Murphy, supra*). In the present case, service connection for the veteran's maxillary condition was established in 1971. R. at 8. Evidence on file at the time of the previous Board decision in 1987 indicated that the condition caused some interference with either speech or masticatory function, although not to a compensable level. R. at 12. The veteran asserted on his November 20, 1989, VA Form 1–9 that the condition had worsened in 1989. Under these circumstances, the Court holds that the veteran submitted a plausible and, thus, well-grounded claim for an increased rating for his service-connected residuals of a maxillary fracture.

Once a claimant has satisfied his or her initial burden of submitting a well-grounded claim, VA has an affirmative duty to "assist such a claimant in developing the facts pertinent to the claim." 38 U.S.C. § 5107(a); *see Masors v. Derwinski*, 2 Vet. App. 181, 186 (1992); *Littke v. Derwinski*, 1 Vet.App. 90, 91 (1990). As noted above, the veteran's claim is that his disability increased in severity in 1989. R. at 32. The most recent examination of his service-connected maxillary condition was in 1985. The record before the BVA, therefore, was inadequate for evaluating the current state of the veteran's service-connected disability. Where the record is inadequate for the purpose of fairly deciding the veteran's claim, VA's statutory duty to assist re-

quires it to help a claimant develop the facts pertinent to his or her claim prior to deciding it. *See Littke*, 1 Vet.App. at 93.

█ Because the record before the BVA contained no evidence of the then-current level of the veteran's service-connected disability, fulfillment of the VA assistive duty in this case "include[d] the conduct of a thorough and contemporaneous medical examination, one which takes into account the records of prior medical treatment, so that the evaluation of the claimed disability is a fully informed one." *Green (Victor) v. Derwinski*, 1 Vet.App. 121, 124 (1991); *see Wilson (Lawrence) v. Derwinski*, 2 Vet. App. 16, 21 (1991); *Parker (Robert) v. Derwinski*, 1 Vet.App. 522, 526 (1991); *Moore, supra; EF v. Derwinski*, 1 Vet.App. 324, 326 (1991). "Where the record does not adequately reveal the current state of the claimant's disability, a VA examination must be conducted." *Schafrath v. Derwinski*, 1 Vet.App. 589, 595 (1991). Therefore, a medical examination for the purpose of determining the current level of the veteran's service-connected disability must be conducted before the claim can fairly be adjudicated. The examiner should have the veteran's full claims file available for review, and should express an opinion as to the level of disability caused by the veteran's service-connected condition, taking into account the extent to which the veteran's non-service-connected conditions may cause or contribute to his current maxillary disability. *See Victor Green*, 1 Vet.App. at 124; 38 C.F.R. § 4.1 (1991) ("[i]t is thus essential . . . in the examination . . . that each disability be viewed in relation to its history").

In addition, VA regulations impose specific requirements to be followed by VA personnel when providing personal hearings for claimants. The regulatory provision in 38 C.F.R. § 3.103(c)(2) (1991) provides with respect to VA hearings: "It is the responsibility of the VA personnel conducting the hearings to . . . suggest the submission of evidence which the claimant may have overlooked and which would be of advantage to the claimant's position." *See Douglas v. Derwinski*, 2 Vet.App. 103,

110 (1992). This Court has consistently held that VA is not free to ignore its own regulations. *See Karnas v. Derwinski,* 1 Vet.App. 308, 313 (1991); *Akles v. Derwinski,* 1 Vet.App. 118, 120–21 (1991); *Bentley v. Derwinski,* 1 Vet.App. 28, 31 (1990). Similarly, the Court has stated: " 'Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.' " *Fugere v. Derwinski,* 1 Vet.App. 103, 108 (1990). Therefore, the VA hearing officer at the veteran's January 9, 1990, personal hearing was required to suggest to the veteran that he submit, or seek to have VA obtain, medical evidence of the then-current level of his service-connected disability.

### B. Secondary Service Connection for Psychiatric Disorder

At his January 9, 1990, personal hearing before the RO, the veteran's sworn testimony was that his service-connected residuals of a maxillary fracture had caused a "nervous condition". R. at 36. In support of that assertion, he submitted VA outpatient treatment records, dated February 13, 1987, indicating a diagnosis of chronic paranoid schizophrenia. R. at 16–17.

█ In deciding claims for benefits, the BVA is required to provide in its decisions "a written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record". 38 U.S.C. § 7104(d)(1) (formerly § 4004); *see Gilbert v. Derwinski,* 1 Vet. App. 49, 56–57 (1990). When an asserted basis for an award of VA benefits is "presented on the record", the BVA's obligation to provide a written statement of its findings and conclusions, with reasons or bases therefor, requires that it explain to the claimant its decision on that claim. The Board may not simply ignore a claim for benefits presented on the record before it. As this Court stated in *Murphy,* 1 Vet.App. at 81:

> The BVA may conclude that a claim was not well grounded, that the claimant did not or could not meet the initial burden imposed by § [5107(a) ], and that there was no duty to provide assistance to the

claimant. Such a conclusion, ... like all other findings and conclusions of the BVA, must be supported by "a written statement of ... the reasons or bases for those findings and conclusions."

█ Since the veteran's claim for secondary service connection of a psychiatric disorder was clearly "presented on the record", the BVA, at a minimum, had a duty to provide a statement of its conclusion, supported by adequate reasons or bases, as to whether that claim was well grounded. *Ibid.; see also Godwin v. Derwinski,* 1 Vet.App. 419, 425 (1991). Therefore, this claim also must be remanded to the BVA to allow it to adjudicate the veteran's claim for secondary service connection and provide a statement of its findings and conclusions with reasons or bases therefor. If the Board finds that the claim is well grounded, it will then be required, pursuant to section 5107(a), to assist the veteran in developing the facts pertinent to that claim, *see Masors, supra; Murphy, supra,* including the conduct of a thorough and contemporaneous medical examination, as described in part A, above.

Furthermore, because the veteran presented that claim at his January 9, 1990, VA personal hearing, the hearing officer, as noted in part A, above, was required, pursuant to 38 C.F.R. § 3.103(c)(2), to suggest to the veteran the submission of evidence that would be advantageous to the veteran. *See Douglas, supra.* Specifically, the hearing officer should have suggested that the veteran submit medical evidence supporting his claim that his current psychiatric disability is causally related to his service-connected disability. Because the hearing officer failed to suggest the submission of evidence, on remand the veteran should be given the opportunity to submit any such evidence in support of his claim.

### C. Unemployability

█ The veteran also raised a claim, on his November 20, 1989, VA Form 1–9, and in his January 9, 1990, sworn testimony, for total service-connected disability based on individual unemployability. *See* 38 C.F.R. § 4.16(b) (1991). In his testimony, the veteran asserted that his psychiatric condition interfered with his ability to re-

tain employment and that he had been unable to hold a job since 1973. R. at 36; *see also* R. at 16. In a February 13, 1987, VA psychiatric examination report, the examiner had written: "patient's prognosis for return to work is poor. He is in my opinion disabled due to mental illness and will remain so for an extended period of time, probably permanently." R. at 17. Therefore, if it is determined that the veteran's psychiatric disorder is related to his service-connected maxillary disability, the unemployability claim is well grounded and the BVA must then determine whether the veteran is entitled to a total service-connected disability rating under 38 C.F.R. § 4.16(b).

### III. CONCLUSION

For the reasons set forth above, the matter must be remanded to the BVA for proceedings consistent with this opinion and further evidentiary development pursuant to controlling statutory and regulatory provisions. On remand, the veteran should be examined for the purposes of determining the current level of his service-connected maxillary disability. He should also be allowed to supplement the record with additional evidence as to each of his claims. Once the record has been adequately developed, the Board, after considering all the evidence of record, should adjudicate or readjudicate each of the veteran's claims. *See Carl Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991) (Remand is not "merely for the purposes of rewriting the opinion so that it will superficially comply with the 'reasons or bases' requirement of 38 U.S.C. § 7104(d)(1).... A remand is meant to entail a critical examination of the justification for the decision."). A final decision by the Board following the remand herein ordered will constitute a new decision which may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which the new decision is mailed to the appellant.

VACATED AND REMANDED.