Stephen Edward ABBOTT, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 91–1259.

United States Court of Veterans Appeals.

June 8, 1993.

Before IVERS, Associate Judge.

## MEMORANDUM DECISION

IVERS, Associate Judge:

Stephen Edward Abbott appeals an April 23, 1991, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for cardiovascular disease, irritable bowel syndrome with spastic colitis, residuals of tattoo removal, bilateral foot disorders, bilateral ankle disorders, a right shoulder disorder, and a psychiatric disorder, denying entitlement to an increased disability rating for residuals of a right thumb laceration, denying entitlement to a total disability rating based on individual unemployability, and denying a permanent and total disability rating (PT) for pension purposes. *Stephen Edward Abbott*, BVA 91-13066 (Apr. 23, 1991). The Secretary of Veterans Affairs (Secretary) has filed a motion for summary affirmance. The Court has jurisdiction of the case pursuant to 38 U.S.C.A. § 7252(a) (West 1991). For the reasons set forth below, the Court affirms in part and vacates in part the decision of the BVA and remands the matter for readjudication consistent with this decision.

### I. Factual Background

Appellant served in the United States Marine Corps from January 4, 1963, to May 3, 1966, R. at 1, and in the United States Navy from September 5, 1974, to November 30, 1976, R. at 2.

On January 25, 1978, he applied to a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) for service connection for residuals of a tattoo removal and for a growth on his penis. R. at 79. The RO apparently denied service connection for both conditions. *See* R. at 96–97. On August 9, 1984, appellant sought to reopen his claim for service connection for residuals of a tattoo removal, while opening new claims for chest pain, gastrointestinal disorders secondary to defoliant exposure in Vietnam, and a permanent and total disability rating for non-service-connected pension. R. at 96. By a rating decision dated January 8, 1985, the RO denied service connection for irritable bowel syndrome, chest pain, and residuals of a tattoo removal. *Ibid.* The RO also assigned a 30% disability rating for a non-service-connected cervical spine sprain and a 10% disability rating for a non-service-connected dysthymic reaction, for a combined non-service-connected disability rating of 40%. R. at 97. On April 4, 1988, the Board denied service connection for a heart condition, irritable bowel syndrome with spastic colon, and residuals of a tattoo removal; the Board also denied entitlement to a PT rating for pension purposes. R. at 225. On April 25, 1988, appellant sought to reopen his claim for heart trouble and irritable bowel syndrome with spastic colon. R. at 227. In connection with the attempt to reopen these claims, he referred to records from July 15, 1975, July 28, 1975, August 14, 1975, November 24, 1976, regarding the heart condition claim and from January 20, 1975, January 27, 1976, February 3, 1976, and February 25, 1976, regarding the irritable bowel syndrome. *Ibid.* At the same time, appellant opened new claims for service connection for a shoulder injury with arthritic residuals, a psychiatric condition, a right thumb and hand disability, arthritis in his feet, and arthritis condition in his ankles. *Ibid.* On January 10, 1990, the RO granted service connection for residuals of a scar on the right thumb (rated as 10% disabling), denied service connection for the other claims, and rated as 10% disabling a non-service-connected arthritic condition in the feet and ankles. R. at 236–37. On April 23, 1991, the Board did not reopen the earlier claims, denied

service connection for the new claims, denied an increased disability rating for the service-connected residuals of a right thumb laceration, denied entitlement to a total rating based on individual unemployability, and denied a PT rating for pension purposes. *Abbott*, BVA 91–13066, at 11–12.

## II. Analysis

■ Appellant's claims for service connection for irritable bowel syndrome with spastic colon, a heart condition, and residuals of a tattoo removal were previously denied by a final BVA decision on April 4, 1988. R. at 224–25. Pursuant to 38 U.S.C.A. § 5108 (West 1991), a previously and finally disallowed claim must be reopened by the Secretary when "new and material evidence" is presented or secured with respect to that claim. *See* 38 U.S.C.A. § 7104(b) (West 1991). On claims to reopen previously and finally disallowed claims, the BVA must conduct a two-part analysis. *See Manio v. Derwinski*, 1 Vet. App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material." *See Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). "New evidence" is evidence that is not "merely cumulative" of other evidence on the record. *Ibid.* Evidence is "material" where it is "relevant and probative" and where there is "a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Ibid.* Second, if the BVA determines that the evidence is new and material, it then must reopen the claim and "evaluate the merits of the veteran's claim in light of *all* the evidence, both new and old." *Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992). Whether evidence is "new and material" is a conclusion of law which this Court reviews de novo under 38 U.S.C.A. § 7261(a)(1) (West 1991). *See Masors, supra.*

■ As for the heart condition, appellant did not submit new records; the records he referred to were already part of the service medical records obtained by the Board in connection with its prior, final April 1988 decision. Therefore, the Court holds that appellant's references to these records did not constitute new evidence.

■ Likewise, the civilian medical records submitted by appellant in connection with the resubmitted claim are not new and material evidence. Appellant did provide an April 12, 1990, letter from Dr. Howard Heilbrunn, a private physician, in which Dr. Heilbrunn wrote: "The patient states that he first had 'angina' diagnosed while in the Navy in 1975." R. at 266. However, this statement is not material because it is not probative. *See Colvin, supra.* The physician's statement is a recitation of appellant's account, and is not itself a diagnosis of angina during service. *See* 38 U.S.C.A. § 1110 (West 1991); 38 C.F.R. § 3.303(a) (1992). In fact, there is no in-service diagnosis of heart disease.

■ In its April 1991 decision, the Board apparently reopened the heart condition claim without undertaking the two-step *Manio* analysis. *Abbott*, BVA 91–13066, at 7. Instead, the Board skipped directly to the issue of service connection and stated: "The evidence added to the record since the prior Board decision does not establish the presence of heart disease in service or within the year following separation from service." *Ibid.* Because the Court holds that appellant did not submit new and material evidence, the Court vacates the BVA's April 1991 decision regarding the heart condition. *See McGinnis v. Brown*, 4 Vet. App. 239, 244 (1993) (Court vacated BVA decision denying service connection where BVA should not have reopened claim in the first instance).

■ As for irritable bowel syndrome with spastic colon, the Court holds that appellant did not submit new and material evidence to warrant reopening the claim. Appellant submitted records from January 1975, January 1976, and February 1976. *See* R. at 227. However, these service medical records are duplicates of records that were available to the Board in connection with its April 1988 decision. Other than these records, appellant has submitted

no evidence that he incurred or aggravated this particular condition during service. In its April 1991 decision, the BVA found that appellant did not submit new evidence. *Abbott,* BVA 91–13066, at 7. The Court thus holds that appellant did not submit new and material evidence to justify reopening this claim and affirms the BVA's April 1991 decision regarding irritable bowel syndrome.

▇▇▇ As for appellant's resubmitted claim for residuals of tattoo removal, he failed to submit any evidence whatsoever, and, in its April 1991 decision, the BVA so found. *Abbott,* BVA 91–13066, at 7. Because the Court holds that appellant did not submit new and material evidence, the Court affirms the BVA's April 1991 decision regarding residuals of tattoo removal.

▇▇▇▇ Appellant also opened several new claims. The Court reviews the Board's findings of fact as to these new claims under a "clearly erroneous" standard of review. 38 U.S.C.A. § 7261(a)(4) (West 1991); *Gilbert v. Derwinski,* 1 Vet. App. 49, 53 (1990). Under the "clearly erroneous" standard of review, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, [the Court] cannot overturn them." *Gilbert, supra.* The Board must base its decisions on "all evidence and material of record," 38 U.S.C.A. § 7104(a) (West 1991), and must provide a "written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record," 38 U.S.C.A. § 7104(d)(1) (West 1991). *See Douglas v. Derwinski,* 2 Vet.App. 435, 438–39 (1992) (en banc); *Gilbert,* 1 Vet.App. at 56–57. Pursuant to these statutory requirements, the Board must "account for the evidence which it finds to be persuasive or unpersuasive," and provide reasons or bases for rejecting evidence submitted by or on behalf of the claimant. *Gilbert,* 1 Vet.App. at 57.

▇▇▇ As for appellant's right shoulder condition, the Court holds that the Board has a plausible basis for denial of service connection. Although appellant sought treatment for a right shoulder injury incurred while playing football in July 1975, R. at 52–53, X-rays taken on July 10, 1976, did not reveal any abnormalities in the right shoulder, R. at 53. An August 9, 1976, examination indicated no abnormalities in his upper extremities. R. at 25. In addition, on an August 9, 1976, report of medical history, under the heading "Have You Ever Had or Have You Now," appellant checked off "No" for "Arthritis, Rheumatism, or Bursitis," "Lameness," and "Painful or 'trick' shoulder." R. at 27. The first diagnosis of a right shoulder condition appears many years after service on a February 14, 1986, X-ray report indicating that appellant had degenerative joint disease of the right shoulder and acromioclavicular joint. R. at 144. However, this X-ray report does not relate the 1986 right shoulder condition to an in-service injury. *See* 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Therefore, the BVA's determination has a plausible basis, and the Court affirms the Board's decision denying service connection for a right shoulder condition.

▇▇▇ As for the acquired psychiatric disorder, the Board's denial of service connection has a plausible basis. Service medical records indicate that appellant exhibited personality disorders. On November 10, 1976, a Navy psychiatrist wrote: "[H]e demonstrated no evidence of a psychosis, neurosis or severe character pathology." R. at 73. On the discharge diagnosis, the psychiatrist wrote: "No significant psychopathology was noted; however, the patient's past history is indicative of mild character pathology." *Ibid.* The psychiatrist then recommended that appellant be separated from service for unsuitability. R. at 74. However, appellant's personality disorder, as described in the service medical records, is not a compensable disability. *See* 38 C.F.R. § 4.127 (1992); *Soyini v. Derwinski,* 1 Vet.App. 540, 542 (1991). The Court thus affirms the Board's denial of service connection for an acquired psychiatric disorder.

■ As for bilateral foot disorders and bilateral ankle disorders, the Board's denial of service connection has a plausible basis in the record. Appellant does have a history of left ankle sprains and lower leg problems at several points during service. R. at 38 (blisters on left foot), R. at 40 (blisters on right heel), R. at 41 (contusions to both lower legs and feet), R. at 60 (left ankle sprain and swelling), R. at 57 (left ankle sprain). However, the disorders were not chronic, as evidenced by the August 9, 1976, examination indicating no lower extremity abnormalities, R. at 25, and the August 9, 1976, medical history report, indicating no foot trouble. R. at 27. In addition, a January 30, 1986, orthopedic examination indicated that appellant had a full range of motion of all joints in his lower extremities. R. at 138. An October 31, 1989, compensation and pension examination indicated that appellant's extremities were normal and that his ankle movements were also normal. R. at 233. In its April 1991 decision, the Board noted that X-rays taken after the sprains and injuries were negative. *Abbott*, BVA 91–13066, at 8. The Board also noted that the January 1986 and October 1989 VA examinations did not reveal any ankle pathology. *Ibid.* The Board's determination that the ankle and foot injuries and sprains were acute and transitory in nature, *Abbott*, BVA 91–13066, at 11, thus has a plausible basis. *See* 38 C.F.R. § 3.303(b) (1992). The Court thus affirms the Board's denial of service connection for bilateral foot disorders and for bilateral ankle disorders.

■ As for the increased rating for residuals of a right thumb laceration, the Board determined that no increase in the 10% disability rating was warranted. *Abbott*, BVA 91–13066, at 10. On the October 31, 1989, compensation and pension examination report, a VA physician provided an impression: "Previous laceration of right thumb. Some residual pain but no residual loss of motion." R. at 233. Under the relevant VA regulations, a superficial scar that is "tender and painful on objective demonstration" warrants a 10% disability rating. 38 C.F.R. § 4.118, Diagnostic Code (DC) 7804 (1992). In order to warrant a

higher rating, a scar must be rated according to the limitation of the function of the part affected. 38 C.F.R. § 4.118, DC 7805 (1992). However, as noted in the October 31, 1989, report, appellant's right thumb laceration did not result in any limitation of function. R. at 233. The Court thus affirms the Board's denial of an increased disability rating for residuals of a right thumb laceration.

■ The Board also has a plausible basis for its determination that appellant was not entitled to a total disability rating based on individual unemployability. *Abbott*, BVA 91–13066, at 10. Under 38 C.F.R. § 4.16(a) (1992), a claimant may be rated totally disabled for purposes of individual unemployability if the claimant's service-connected disabilities meet certain schedular requirements. Here, appellant's sole service-connected condition was a residual scar on his right thumb, rated as 10% disabling. Because appellant's service-connected disability does not meet the schedular criteria, he does not qualify for a total disability rating under section 4.16(a). The Board correctly concluded that appellant did not qualify for a total disability rating on an extraschedular basis under 38 C.F.R. § 4.16(b) either. As discussed below, appellant has submitted evidence that he is unemployable; however, this evidence does not relate his unemployability to his service-connected right thumb residual scar. Therefore, the Court affirms the Board's denial of a total disability rating for individual unemployability purposes.

■ However, the Board did not provide adequate reasons or bases regarding appellant's claim for a PT rating for pension purposes. Appellant filed for increased compensation based on unemployability on September 2, 1990. R. at 279–80; *see* 38 U.S.C. §§ 101(11), (29), 1521(a) (West 1991); 38 C.F.R. § 4.17 (1992); 38 C.F.R. § 3.321(b)(2) (1992) (extraschedular basis for PT rating for pension purposes); *see also Proscelle v. Derwinski*, 2 Vet.App. 629, 631 (1992) (claim based on increase in severity is new, not reopened, claim); *Quarles v. Derwinski*, 3 Vet.App. 129, 133

(1992) (same). In the application, he referred to three accidents and injuries in 1990, which had occurred subsequent to the BVA's April 1988 decision, and to psychological depression. R. at 280. He checked a box in the application indicating that he was receiving or expected to receive Social Security benefits. R. at 279. In his September 20, 1990, VA Form 1–9, he remarked that his accidents had combined with what he considered to be service-connected problems to render him unemployable. R. at 282. He also submitted records from a private hospital where he sought treatment after the January 1990 neck injury. R. at 247–51. Among those records is a private physician's instruction to appellant: "I have advised you this injury is a serious one involving a bruise to your spinal nerves or spinal cord. You don't want to be assessed now despite the fact that this could be very serious." R. at 247. Appellant also submitted an April 12, 1990, letter from Dr. Howard Heilbrunn, in which the physician described appellant's version of two accidents in January and February 1990. R. at 265–66.

In its April 1991 decision, the Board stated:

> [Appellant's] principal disabilities are a severe chronic major affective disorder and orthopedic conditions affecting the cervical and lumbar spine, right shoulder, and other joints. Nevertheless, these disabilities, when taken into consideration with his educational background, do not preclude him from gainful employment so that the requirements for assignment of a [PT] rating for pension purposes are not met.

*Abbott*, BVA 91–13066, at 10. In its decision, the Board failed to provide adequate reasons or bases discussing appellant's evidence in support of a PT rating for pension purposes. *See Gilbert*, 1 Vet.App. at 57. The Board failed to discuss the evidence submitted in connection with appellant's application for increased compensation based on unemployability, including the reference to Social Security benefits. *See Collier v. Derwinski*, 1 Vet.App. 413, 417 (1991) (VA cannot ignore Social Security Administration (SSA) determination of disability but

must provide reasons or bases regarding such determination); *Brown (Clem) v. Derwinski*, 2 Vet.App. 444, 448 (1992) (Board must consider SSA unemployability determination and must give statement of reasons or bases for the weight given to this evidence); *see also Murincsak v. Derwinski*, 2 Vet.App. 363, 370 (1992) (VA's duty to assist includes obtaining SSA decision and supporting medical records pertinent to VA claim). The Board also failed to discuss or provide adequate reasons or bases regarding earlier evidence of unemployability. R. at 110, 132, 185–86, 198. On remand, the Board must provide an adequate statement of reasons or bases regarding its evaluation of appellant's claim for PT rating for pension purposes. *See Hyder v. Derwinski*, 1 Vet.App. 221, 224 (1991). On remand, appellant will be free to submit additional evidence and argument. *See Quarles*, 3 Vet.App. at 141.

The Board also failed in its duty to assist appellant by not adjudicating a claim for a right eye disorder and skin rash and hives. Once a claimant has "submitted evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded," VA has a duty to assist the claimant under 38 U.S.C.A. § 5107(a) (West 1991). *Murphy v. Derwinski*, 1 Vet.App. 78, 81–82 (1990); *EF v. Derwinski*, 1 Vet.App. 324, 326 (1991) (VA's statutory duty to assist means that VA must liberally read all documents or oral testimony submitted prior to the BVA decision to include all issues presented); *Proscelle*, 2 Vet.App. at 633 (BVA may not ignore claim for benefits presented on the record before the Board). Pursuant to 38 C.F.R. § 20.202 (1992), the Board is required to construe arguments raised in a substantive appeal in a liberal manner to determine whether they raise issues on appeal. *See Myers v. Derwinski*, 1 Vet.App. 127, 129–30 (1991). Here, appellant indicated on an October 31, 1989, report that he had pain and flashes in his right eye. R. at 232. In an April 12, 1990, letter, Dr. Heilbrunn also described a vitreous detachment in the right eye. R. at 267. On a September 2, 1990, VA Form 1–9 (Appeal to Board

of Veterans Appeals), appellant specifically referred to the right eye condition and to the skin rash and hives. R. at 281, 283, 285. In addition, he pointed to medical records pertaining to the right eye disorder, R. at 283, and to the skin rash and hives, R. at 285. In its April 1991 decision, the Board did not even address these claims, let alone provide reasons or bases for whether they were well grounded or not. *See Murphy,* 1 Vet.App. at 81 (BVA must provide adequate reasons or bases for a finding that a claim is not well grounded); *cf. Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993) (Court vacated BVA decision and remanded with directions to vacate RO decision where both decisions had erroneously treated a claim as well grounded and had denied service connection on the merits). On remand, the Board must adjudicate these claims and provide adequate reasons or bases for its findings of fact.

### III. Conclusion

 Summary disposition is appropriate when, as here, the case is one "of relative simplicity" whose outcome is controlled by our precedents and is "not reasonably debatable." *Frankel v. Derwinski,* 1 Vet. App. 23, 25–26 (1990). Accordingly, upon consideration of the record, appellee's motion for summary affirmance, and appellant's brief, the Court holds that the Secretary's motion is granted in part and denied in part, the decision of the BVA is AFFIRMED in part and VACATED in part, and the case is REMANDED for readjudication consistent with this decision.