Citation Nr: 1132117 
Decision Date: 08/31/11 Archive Date: 09/07/11 

DOCKET NO. 05-39 128A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to an evaluation in excess of 20 percent for degenerative disc disease of the cervical spine. 

2. Entitlement to an evaluation in excess of 20 percent for degenerative joint disease of the lumbar spine. 

3. Entitlement to an evaluation in excess of 10 percent for bursitis of the right hip. 

4. Entitlement to an increased (compensable) evaluation for left ear hearing loss. 

5. Entitlement to an increased (compensable) evaluation for sciatic neuropathy of the right lower extremity, to include whether the reduction from 10 percent to 0 percent effective from October 1, 2005 was proper. 

6. Entitlement to a total disability rating based upon individual unemployability due to service-connected disability.


REPRESENTATION

Appellant represented by: Texas Veterans Commission


WITNESSES AT HEARINGS ON APPEAL

The appellant and his spouse


ATTORNEY FOR THE BOARD

Stephen F. Sylvester, Counsel


INTRODUCTION

The Veteran served on active duty from June 1972 to April 1974, from September 1974 to September 1977, and from November 1982 to August 1997. 

This case comes before the Board of Veterans' Appeals (Board) on appeal of September 2004 and July 2005 decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas. 

This case was previously before the Board in June 2007, at which time it was remanded to the RO in order that the Veteran might be afforded a videoconference hearing before a Veterans Law Judge. That hearing was conducted in April 2011, and, accordingly, the case is now once more before the Board for appellate review. 

Upon review of this case, it is clear that the Veteran has chosen not to perfect his appeal regarding the issue of service connection for carcinoma of the bladder. Accordingly, that issue is not currently before the Board. However, based on various statements contained in the file, it is unclear whether, in addition to the issues currently before the Board, the Veteran wishes to pursue the issues of service connection for right ear hearing loss and bilateral tinnitus. Inasmuch as those issues have not been developed or certified for appellate review, they are not for consideration at this time. They are, however, being referred to the RO for clarification, and, if necessary, appropriate action. 

Finally, for reasons which will become apparent, this appeal is once again being REMANDED to the RO via the Appeals Management Center (AMC) in Washington, D.C. VA will notify you if further action is required on your part.


REMAND

A review of the record in this case raises some question as to the current severity of the disabilities at issue, as well as their bearing upon the Veteran's ability to engage in substantially gainful employment. 

In that regard, concerning the issue of an increased evaluation for sciatic neuropathy of the right lower extremity, the Board notes that, in a rating decision of October 2002, the RO granted service connection (and a 10 percent evaluation) for sciatic neuropathy of the right lower extremity, essentially on the basis that there was evidence of decreased sensation on the lateral aspect of the Veteran's right leg, in conjunction with straight leg elevation which was positive on the right, all of which was felt to be secondary to the Veteran's service-connected degenerative joint disease of the lumbar spine. However, in a subsequent rating decision of July 2005, the Veteran's previously-assigned 10 percent evaluation for sciatic neuropathy of the right lower extremity was reduced to 0 percent, for the most part on the basis of VA nerve conduction/electromyographic studies conducted in April 2005, which studies showed no evidence of any sciatic radiculopathy in the Veteran's right lower extremity. 

Significantly, following a VA spine examination in April 2006, it was once again noted that there appeared to be no evidence of sciatic neuropathy in the Veteran's right lower extremity. However, that same examination noted the presence of "multifactorial" sensory polyneuropathy characterized by tingling and numbness in both of the Veteran's thighs, extending down to his feet. Significantly, following a service medical facility examination (which included both radiographic studies and magnetic resonance imagining) in June 2007, there was noted the presence of lumbar intervertebral disc degeneration, as well as both sciatic radiculopathy and polyneuropathy. Moreover, during the course of a VA medical examination in October 2009, clinical evaluation was consistent with the presence of decreased sensation to light touch and position sense in the Veteran's right lower extremity. While it is true that, following that examination, the examiner was of the opinion that the Veteran's right lower extremity radiculopathy was not caused by or a result of his service-connected lumbar discogenic disease, the question in this case is not one of causation, but, rather, whether the Veteran does, in fact, suffer from neuropathy/radiculopathy and/or polyneuropathy of his right lower extremity, and, if so, the severity of symptomatology associated with that pathology. Under the circumstances, the Board is of the opinion that additional development of the evidence is necessary prior to a final adjudication of the Veteran's claim. 

Turning to the issues of increased evaluations for the other disabilities currently on appeal, as well as the Veteran's potential entitlement to a total disability rating based upon individual unemployability, the Board notes that, during the course of a videoconference hearing before the undersigned Veterans Law Judge in April 2011, the Veteran indicated that, in May 2010, he was to undergo surgery on his cervical spine at William Beaumont Army Medical Center. However, due to a problem with "infections," he did not, in fact, undergo that surgery. In its place, the Veteran reportedly received a number of injections for relief of pain in his cervical spine. Significantly, during the course of the same videoconference hearing, the Veteran indicated that, in February or March 2011, he received treatment for his various service-connected disabilities (including all of the disabilities currently on appeal) at that same William Beaumont Army Medical Center, as well as at his local VA medical center. Regrettably, none of the aforementioned treatment records are at this time a part of the Veteran's claims folder. Inasmuch as such records are considered part of the record on appeal, they must be obtained and considered prior to a final adjudication of the Veteran's claims for increase. See Bell v. Derwinski, 2 Vet. App. 611 (1992). 

Finally, based on a review of the Veteran's file, it would appear that he is currently in receipt of Social Security disability benefits due at least in part to his service-connected disabilities. Moreover, on various occasions, and during the course of the aforementioned videoconference hearing in April 2011, the Veteran indicated that he had been forced to retire from the United States Postal Service due primarily to his service-connected disabilities. The Board notes that, pursuant to the recent holding of The United States Court of Appeals for Veterans Claims (Court) in Rice v. Shinseki, 22 Vet. App. 447 (2009), where (as in this case) the Veteran, as part of his increased rating claims, asserts that he is unemployable due in part to the disabilities for which increased ratings are being sought, a claim for total disability based upon individual unemployability is "part and parcel" of those increased rating claims. Significantly, service connection is currently in effect for degenerative disc disease of the cervical spine, degenerative joint disease of the lumbar spine, bursitis of the right hip, sciatic neuropathy of the right lower extremity, and left ear hearing loss, as well as for peripheral neuropathy of the right upper extremity, and radiculopathy of the left lower extremity. However, based on a review of the file, the Veteran last underwent VA examinations for compensation purposes in October 2009, almost two years ago. Under the circumstances, the Board is of the opinion that additional, more contemporaneous VA examinations would be appropriate prior to a final adjudication of his current claims. See Snuffer Gober, 10 Vet. App. 400 (1997); see also Caffrey v. Brown, 6 Vet. App. 377, 381 (1994); Weggenmann v. Brown, 5 Vet. App. 281, 284 (1993); Proscelle v. Derwinski, 2 Vet. App. 629 (1992). 

Accordingly, in light of the aforementioned, and in deference to the request of the Veteran's accredited representative, the case is once again REMANDED to the RO/AMC for the following actions: 

1. Any pertinent VA or other inpatient or outpatient treatment records, subsequent to April 2010, the date of the most recent pertinent evidence of record, and specifically including any and all records of recent treatment at either William Beaumont Army Medical Center or the Veteran's local VA medical center, should be obtained and incorporated in the claims folder. The Veteran should be requested to sign the necessary authorization for release of any private medical records to the VA. All attempts to procure such records should be documented in the file. If the RO/AMC cannot obtain records identified by the Veteran, a notation to that effect should be included in the claims folder. In addition, the Veteran and his representative should be informed of any such problem. 

2. The Veteran should then be afforded a VA neurological examination, as well as additional VA examinations, by appropriate specialists, if necessary, in order to more accurately determine the current severity of the disabilities at issue. The RO/AMC is advised that the Veteran must be given adequate notice of the date and place of any requested examination(s), and a copy of all such notifications must be associated with the claims folder. The Veteran is to be advised that failure to report for a scheduled VA examination or examinations without good cause may have an adverse effect on his claims. 

As regards the requested examinations, all pertinent symptomatology and findings should be reported in detail, and all appropriate studies (including necessary neurologic studies) should be performed. 

Following completion of the neurologic examination, the examiner should specifically comment as to whether the Veteran currently suffers from chronic, clinically-identifiable sciatic neuropathy and/or sensory polyneuropathy of his right lower extremity, and, if so, whether such pathology is representative of mild incomplete paralysis of the sciatic nerve below the knee. 

As regards the other issues currently on appeal, and with the exception of the Veteran's left ear hearing loss, the appropriate examiner or examiners should specifically comment regarding the severity of the disability at issue, to include any and all limitation of motion, as well as any functional loss associated with pain, weakened movement, excess fatigability, instability, incoordination, swelling, and deformity or atrophy of disuse. The examiner should also discuss factors associated with disability, such as objective indications of pain or pressure on manipulation. In addition, the examiner should inquire as to whether the Veteran experiences flare-ups associated with his service-connected disabilities. To the extent possible, any additional functional loss or limitation of motion attributable to such flare-ups should be described. 

Finally, following completion of the aforementioned examinations, the appropriate examiner or examiners should offer an opinion as to whether, due exclusively to the Veteran's service-connected disabilities, he is precluded from engaging in all forms, including sedentary forms, of substantially gainful employment consistent with his education and occupational experience. All such information and opinions, when obtained, should be made a part of the Veteran's claims folder. 




The claims folder and a separate copy of this REMAND must be made available to and reviewed by the examiners prior to completion of the examinations. Moreover, a notation to the effect that this record review has taken place must be included in the examination reports. 

3. The RO/AMC should then review the Veteran's claims for increased evaluations, as well as the claim for a total disability rating based upon individual unemployability. Should the benefits sought on appeal remain denied, the Veteran and his representative should be provided with a Supplemental Statement of the Case (SSOC). The SSOC must contain notice of all relevant action taken on the claims for benefits since the issuance of the most recent SSOC in April 2010. An appropriate period of time should be allowed for response. 

Thereafter, the case should be returned to the Board, if in order. The Board intimates no opinion as to the ultimate outcome in this case. The Veteran need take no action unless otherwise notified. 

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See The Veterans Benefits Act of 2003, Pub. L. No. 108-183, § 707(a), (b), 117 Stat. 2651 (2003) (to be codified at 38 U.S.C. §§ 5109B, 7112).


 _________________________________________________
 K. J. ALIBRANDO
 Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2002), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2005).