Citation Nr: 1220800 
Decision Date: 06/14/12 Archive Date: 06/22/12

DOCKET NO. 09-32 817 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Jackson, Mississippi


THE ISSUES

1. Entitlement to an increased rating for post-surgical residuals of a closed transverse fracture of the left femoral shaft, currently evaluated as 10 percent disabling.

2. Entitlement to an increased rating for left knee degenerative joint disease, currently evaluated as 10 percent disabling.

3. Entitlement to a separate rating for a left buttock scar, a post-surgical residual of a closed transverse fracture of the left femoral shaft.


REPRESENTATION

Veteran represented by: The American Legion



WITNESS AT HEARINGS ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

Jennifer R. White, Associate Counsel


INTRODUCTION

The Veteran served on active duty from April 1987 to September 1987.

This case comes before the Board of Veterans' Appeals (Board) on appeal from a June 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Jackson, Mississippi.

In May 2010, the Veteran testified at a hearing before RO personnel. A transcript of that proceeding is of record.

In February 2012, the Veteran testified at a videoconference hearing before the undersigned Veterans Law Judge. A transcript of that proceeding is of record.

The issues of an increased rating for post-surgical residuals of a closed transverse fracture of the left femoral shaft and an increased rating for left knee degenerative joint disease are addressed in the REMAND portion of the decision below and are REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.



FINDING OF FACT

The Veteran has a painful, tender surgical scar of the left buttock, a post-surgical residual of a closed transverse fracture of the left femoral shaft, which does not limit function of the affected part. 


CONCLUSION OF LAW

The criteria for a separate 10 percent disability rating, but not more, for the Veteran's tender surgical scar, left buttock, have been met. 38 U.S.C.A. §§ 1155, 5103; 38 C.F.R. §§ 3.159, Part 4, 4.7, 4.14, 4.40, 4.45, 4.118, Diagnostic Code 7804 (2007). 


REASONS AND BASES FOR FINDING AND CONCLUSION

The Veterans Claims Assistance Act of 2000

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2010). 

Proper notice from VA must inform the claimant of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1); Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

In addition, the notice requirements of the VCAA apply to all elements of a service-connection claim. Accordingly, notice must include information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

VCAA notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). Where complete notice is not timely accomplished, such error may be cured by issuance of a fully compliant notice, followed by readjudication of the claim. See Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); see also Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006).

The Veteran's separate rating claim arises from an appeal of the initial evaluation following the grant of service connection. Courts have held that once service connection is granted the claim is substantiated, additional notice is not required and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). Therefore, no further notice is required under VCAA. Moreover, as the issue being decided at the present time is granted in its entirety, there is no need for discussion of the duty to assist. 

Analysis

Disability evaluations are determined by the application of VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. 

In Fenderson v. West, 12 Vet. App. 119 (1999), the Court held that evidence to be considered in the appeal of an initial assignment of a rating was not limited to that reflecting the then current severity of the disorder. The Court also discussed the concept of the "staging" of ratings, finding that in cases where an initially assigned disability evaluation has been disagreed with, it was possible for a Veteran to be awarded separate evaluations for separate periods based on the facts found during the appeal period. Fenderson at 126-28. 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Any reasonable doubt regarding a degree of disability will be resolved in favor of the Veteran. 38 C.F.R. § 4.3. 

Rating criteria for skin disorders, found at 38 C.F.R. § 4.118, were amended effective August 30, 2002, see 67 Fed. Reg. 49490 -99 (July 31, 2002) and again in October 2008. The October 2008 revisions are applicable to claims for benefits received by the VA on or after October 23, 2008, although a Veteran may request evaluation under the new criteria. See 73 Fed. Reg. 54708 (September 23, 2008). 

In this case, the Veteran's claim for an increased rating for his left leg and knee disability was received in January 2008. The Veteran's scar is being granted as part and parcel of this request for an increased rating. Therefore, the post-2002 and pre-October 2008 version of the schedular criteria is applicable; the Veteran has not requested evaluation under the criteria as revised effective in 2008, so the version of the regulations in effect in 2007, when the Veteran submitted the claim which is the subject of this appeal, is the version of the regulations applicable to the appeal. The Board additionally notes that the pre-October 2008 version of the regulations is the most beneficial to the Veteran. Thus, the Board will proceed utilizing the rating criteria in effect at the time of the Veteran's claim for an increased rating.

Scars of the head, face, or neck; scars of the head, face, or neck; or, other disfigurement of the head, face, or neck, are evaluated under 38 C.F.R. § 4.118, Diagnostic Code 7800. No scar addressed in this appeal affects the Veteran's head, face, or neck. Thus, Diagnostic Code 7800 is not applicable. 

If a scar (in a location other than the head, face or neck) has an area of at least 6 square inches (39 sq. cm.) but less than 12 square inches (77 sq. cm.), and is deep and nonlinear, a 10 percent evaluation is warranted. If a scar is superficial rather than deep, a 10 percent evaluation is warranted if the scar area is 144 square inches (929 sq. cm.) or greater. An evaluation in excess of 10 percent is available under Diagnostic Code 7801, for a deep scar, based on the size of the scar, but a 10 percent evaluation is the only schedular rating, and thus, the maximum schedular rating, available for a scar that is superficial based on the size of the scar. 

A compensable evaluation was provided for a superficial, unstable scar or a superficial, painful scar, and scars were also rated based on limitation of function of the affected part prior to October 2008. Diagnostic Codes 7803, 7804, 7805. 

As set forth in the applicable version of the regulations, a deep scar was one "associated with underlying soft tissue damage." Diagnostic Code 7801, N.2. A superficial scar is defined as a scar "not associated with underlying soft tissue damage." DC 7802, N. 2. (38 C.F.R. § 4.118, Diagnostic Codes 7801, 7802 (as in effect prior to October 23, 2008 and after August 30, 2002). 

The Veteran's left leg and knee disabilities were considered in a March 2008 VA examination. The examiner indicated that there is a scar as a residual of the Veteran's surgery after his in-service left femur fracture; a closed reduction intramedullary nailing. The examiner indicated that the Veteran had a scar of the left buttock which is 8 centimeters in length; well-healed; with no sign of infection; and no erythema, edema or discharge. It was not fixed to underlying tissue and there was no muscle loss.

A June 2010 VA examination indicates that the Veteran had a well-healed surgical incision of the left proximal thigh over the hip.

The Veteran indicated in his February 2012 hearing testimony that his scar is painful and tender; that it has always been there but did not bother him as much in the past.

The Veteran is competent to report observable symptomatology such as a tender scar. Moreover, despite the absence of a formal finding at the VA examination, his statements are deemed credible here. Indeed, while the March 2008 VA examination indicated that the scar was well-healed, there was no express finding that it was not tender. If the Veteran was not directly asked such question he may not have volunteered that information, accounting for the lack of complaint noted at that time. 

Thus, resolving reasonable doubt in the Veteran's favor, a separate 10 percent disability rating for a painful, tender scar of the left buttock, as a residual of his in-service surgery, is warranted here. The Veteran's scar does not warrant a higher rating as it does not involve the head, face, or neck and does not limit function of the affected part. 


ORDER

Entitlement to a separate 10 percent rating for a left buttock scar, a post-surgical residual of a closed transverse fracture of the left femoral shaft, is granted, subject to the law and regulations governing the payment of monetary benefits.


REMAND

The Board notes that the Veteran is currently rated as 10 percent disabled under Diagnostic Code 5257-5010 (specifically for degenerative joint disease of the left knee) and 10 percent disabled under Diagnostic Code 5255 (considering a left hip disability) as residuals of his post-operative residuals, closed transverse fracture, femoral shaft, left. 

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance. Functional loss may be due to the absence or deformity of structures or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior in undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. § 4.40. 

With respect to joints, in particular, the factors of disability reside in reductions of normal excursion of movements in different planes. Inquiry will be directed to more or less than normal movement, weakened movement, excess fatigability, incoordination, pain on movement, swelling, deformity or atrophy of disuse. 38 C.F.R. § 4.45. 

The intent of the Rating Schedule is to recognize actually painful, unstable or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59. 

Normal range of hip flexion is from 0 to 125 degrees. Normal hip abduction is from 0 to 45 degrees. 38 C.F.R. § 4.71a, Plate II. 

In determining the degree of limitation of motion, the provisions of 38 C.F.R. §§ 4.10, 4.40 and 4.45 are for consideration. See DeLuca v. Brown, 8 Vet. App. 202 (1995). 

Under Diagnostic Code 5251, a 10 percent disability rating is warranted for thigh limitation of extension limited to 5 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5251. 

Under Diagnostic Code 5252 concerning the thigh, a 10 percent disability rating is assigned for limitation of flexion to 45 degrees; a 20 percent disability rating is assigned for flexion limited to 30 degrees; a 30 percent disability rating is assigned for flexion limited to 20 degrees; and a 40 percent disability rating is assigned for flexion limited to 10 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5252. 

Under Diagnostic Code 5253, a 10 percent disability rating is warranted for limitation of rotation of, cannot toe-out more than 15 degrees, affected leg. A 20 percent rating is warranted where adduction is limited such that legs cannot be crossed; and a 30 percent rating is assigned for limitation of abduction of, motion lost beyond 10 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5253. 

Under Diagnostic Code 5254, an 80 percent rating is warranted for flail joint of the hip. 38 C.F.R. § 4.71a, Diagnostic Code 5254. 

Lastly, Diagnostic Code 5255 provides a 10 percent rating for malunion of the femur with slight knee or hip disability; a 20 percent evaluation for malunion of the femur with moderate knee or hip disability; or a 30 percent evaluation is assigned for malunion with marked knee or hip disability. A 60 percent evaluation is assigned for fracture of surgical neck with false joint or for impairment with nonunion without loose motion and weightbearing preserved with aid of brace. An 80 percent evaluation is assigned for fracture of the shaft or anatomical neck with nonunion, with loose motion (spiral or oblique fracture). 38 C.F.R. § 4.71a, Diagnostic Code DC 5255.

The Board observes that normal range of knee motion is 140 degrees of flexion and zero degrees of extension. 38 C.F.R. § 4.71, Plate II. 

Diagnostic Code 5260 provides for a zero percent evaluation where flexion of the leg is limited to 60 degrees. For a 10 percent evaluation, flexion must be limited to 45 degrees. A 20 percent evaluation is warranted where flexion is limited to 30 degrees. A 30 percent evaluation may be assigned where flexion is limited to 15 degrees. 

Diagnostic Code 5261 provides for a zero percent evaluation where extension of the leg is limited to 5 degrees. A 10 percent evaluation requires extension limited to 10 degrees. A 20 percent evaluation is warranted where extension is limited to 15 degrees. A 30 percent evaluation may be assigned where the evidence shows extension limited to 20 degrees. For a 40 percent evaluation, extension must be limited to 30 degrees. And finally, where extension is limited to 45 degrees a 50 percent evaluation may be assigned. 38 C.F.R. § 4.71a, Diagnostic Codes 5260, 5261. 

Diagnostic Code 5256 provides for the assignment of a 30 percent rating when there is ankylosis in a favorable angle in full extension, or in slight flexion between 0 and 10 degrees. A 40 percent rating is assigned when there is extremely unfavorable ankylosis in flexion between 10 and 20 degrees. A 50 percent rating is warranted when there is extremely unfavorable ankylosis in flexion between 20 and 45 degrees. A 60 percent rating is warranted when there is extremely unfavorable ankylosis in flexion at an angle of 45 degrees or more. 

Diagnostic Code 5257 provides for the assignment of a 10 percent rating when there is slight recurrent subluxation or lateral instability, a 20 percent rating when there is moderate recurrent subluxation or lateral instability, and a 30 percent evaluation for severe knee impairment with recurrent subluxation or lateral instability. 

Diagnostic Code 5258 provides for the assignment of a 20 percent rating when cartilage, semilunar, is dislocated with frequent episodes of "locking," "pain", and effusion into the joint. 

Diagnostic Code 5259 provides for the assignment of a 10 percent rating for removal of symptomatic, cartilage, semilunar.

The Board notes that the Veteran was afforded a VA examination in March 2008. The examiner indicated that the Veteran had no history of swelling, popping with pain or locking. The examiner did not indicate whether the Veteran had recurrent subluxation or lateral instability.

The Veteran was afforded an additional VA examination in June 2010. The Veteran indicated that he had subjective feelings of instability with giving way episodes. The examiner did not indicate the Veteran's range of motion in his hip/thigh. He also did not provide sufficient information concerning the Deluca criteria but only stated that there was pain with range of motion testing which could further limit function.

The Veteran testified during his Board hearing testimony in February 2012 that his knee buckles, gives way, swells, locks up, and pops with substantial fatigue and pain. 

The Veteran is entitled to a new VA examination when there is evidence that the condition has worsened since the last examination. Snuffer v. Gober, 10 Vet. App. 400 (1997); VAOPGCPREC 11-95 (1995). The Veteran's most recent VA joints examination was conducted in June 2010, and the evidence indicates that his disability has worsened in severity. See Proscelle v. Derwinski, 2 Vet. App. 629 (1992) (the Veteran is competent to provide an opinion that his disability has worsened). Therefore, the Veteran should be provided a VA examination to determine the current severity of his left leg disability.

Accordingly, the case is REMANDED for the following action:

1. Afford the Veteran a VA examination to evaluate the current severity of his service-connected left leg disability. The claims folder must be made available to the examiner in conjunction with the examination and the examiner should acknowledge in the examination report or in an addendum that the claims folder was reviewed. 

The examiner should provide an opinion as to the severity of the service-connected symptomatology (consistent with all relevant Diagnostic Codes and the Deluca criteria) and any impact on functioning. 

The rationale for all opinions should be provided. 

2. Readjudicate the issues on appeal. If the benefits sought on appeal are not fully granted, issue a supplemental statement of the case before returning the case to the Board, if otherwise in order.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2011).



______________________________________________
ERIC S. LEBOFF
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs