SCHOELEN, Judge:
The appellant, Karen S. McDowell, through counsel, appeals a March 22, 2007, Board of Veterans’ Appeals (Board) decision that her minor daughter (hereinafter referred to as T.M.) could not be recognized as a “child” of veteran Ralph R. Dover for purposes of entitlement to VA benefits. Record (R.) at 8. This appeal is timely, and the Court has jurisdiction to review the Board’s decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). Although the Board had before it evidence suggesting that the veteran had accepted the appellant’s child as his own, the Board did not err by finding the scientific deoxyribo-nucleic acid (DNA) test results of record more probative to conclude that T.M. was not the veteran’s illegitimate child, and thus the Court will affirm the Board’s decision.
I. BACKGROUND
The veteran, Ralph R. Dover, served honorably in the U.S. Army from November 1969 to February 1972, including service in Vietnam. R. at 13. In February 1991, he was granted VA compensation *209 benefits for post-traumatic stress disorder (PTSD). He was hospitalized for this condition from January 14,1992, through February 18, 1992. R. at 23, 62. At the time of his hospitalization, he was also diagnosed with erectile dysfunction. Id. He died on March 8, 1992, of pneumonia complicated by dehydration. R. at 29. He was not mariied and had no dependents listed in his VA claims file at the time of his death. R. at 29, 50.
On November 19, 1992, the appellant gave birth to daughter T.M. R. at 42. In February 2003, the appellant filed a claim for VA dependency and indemnity compensation (DIC), asserting that T.M. was the veteran’s child. R. at 41^16. The appellant claimed that she had had a relationship with the veteran. R. at 91. She conceded that the veteran was not listed on T.M.’s birth certificate and acknowledged that she did not possess documentation indicating that the veteran was T.M.’s father. R. at 50.
In July 2003, a VA regional office (RO) advised the appellant of the evidence she could submit that could establish or prove that T.M. was the veteran’s daughter. R. at 95. In response, the appellant submitted statements from the veteran’s relatives (R. at 100, 105-06, 108, 148^9, 166, 175). Among these statements was a 2003 letter from the veteran’s sister, who stated that the veteran was aware of the appellant’s pregnancy, that he wanted the child, and “accepted] it to be his.” R. at 105. A 2003 letter from a friend of the veteran related that the veteran accepted responsibility as T.M.’s father and that he wanted the child. R. at 106. Another sister of the veteran’s provided a 2003 letter in which she stated that he “acknowledged this child as his” and “talked about this being his child.” R. at 166. The appellant’s roommate also submitted a 2003 letter to VA, stating that the veteran had planned to take care of the appellant and the child. R. at 175. The appellant further provided the RO with T.M.’s birth certificate bearing the veteran’s name, hand written, identifying him as the father, while all of the other information on the birth certificate had been typewritten. R. at 117. The appellant later admitted to the RO that she had written the veteran’s name on the birth certificate to demonstrate how the certificate should have been completed. R. at 148.
The appellant also sought DNA testing from an independent agency to show that T.M. was the veteran’s child. She provided the DNA results to the RO. R. at 161. That report concluded that, based on the samples provided by T.M. and the veteran’s biological sisters, there was a 0.208% probability that the veteran was T.M.’s biological father. Id. In January 2006, the RO found that the evidence of record did not establish the veteran was T.M.’s father and denied the appellant’s claim. R. at 194-201. The appellant appealed, and in its March 2007 decision, the Board examined the evidence in light of the criteria set forth in 38 C.F.R. § 3.210 (2006). The Board found that there was no legal documentation showing that the veteran was T.M.’s father. R. at 6. The Board also observed that the veteran was hospitalized “during the period in which [T.M.] was allegedly conceived” and that he had been diagnosed with erectile dysfunction, which along with the results of the DNA test, made it highly improbable that the veteran was T.M.’s father. R. at 7. The Board also found that
the statements of the appellant and others to the effect that the veteran had known that the appellant was pregnant and had accepted the child as his are of less probative value than the results of the genetics testing which make it ex *210 tremely unlikely that the veteran is [T.M’s father].
Id. The Board thus concluded that the preponderance of the evidence was against a finding that T.M. was the veteran’s “child” for VA benefits purposes. R. at 2, 7. This appeal followed.
On appeal, the appellant argues that the Board is prohibited from considering the February 2004 DNA test results to determine whether T.M. was the veteran’s child. She maintains that there is no requirement under 38 C.F.R. § 3.210(b) (2009) that her daughter be biologically the veteran’s “child” for VA benefits purposes. Appellant’s Brief (Br.) at 8. She also contends that the Board failed to provide an adequate statement of reasons or bases for its decision because it did not sufficiently analyze why DNA test results were deemed more probative than the other evidence purportedly establishing that T.M. was the veteran’s child, including the statements from the veteran’s family members and friends. Id. at 11.
The Secretary contends that, under § 3.210(b), determining whether a child is eligible for benefits as an illegitimate child of a veteran requires that “ ‘the sufficiency of the evidence will be determined [in] accordance with the facts of the individual case,’ ” and it was therefore permissible for the Board to consider the evidence of DNA test results. Secretary’s Br. at 8 (quoting 38 C.F.R. § 3.210(b)). The Secretary maintains that the Board has a duty to weigh all of the evidence of record, including the negative evidence. Id. He also asserts that the Board provided sufficient reasons and bases to support its decision and that the Board properly considered the statements offered to establish that the veteran had accepted that the child was his. Secretary’s Br. at 6-7.
In her reply brief, the appellant reasserts her position that the Board may not consider medical evidence in making a determination under § 3.210(b) because that regulation specifically sets forth a list of the type of evidence that “will” be considered and “medical evidence” is not included on that list. Reply Br. at 3.
At oral argument, the appellant asserted that there was no biological requirement in the regulation and therefore the results of the DNA test were irrelevant and should not have been considered by the Board. The Secretary argued that the biological requirement was implicit in the regulation, that the Court should not dismiss such powerful scientific evidence, and that lay testimony that the appellant submitted was not helpful to the appellant’s claim in light of the results of the DNA test.
II. LAW AND ANALYSIS
A. Required Relationship
Children of a deceased veteran may qualify for DIC benefits if the veteran died from a service-connected or compen-sable disability. 38 U.S.C. § 1310. “Child” is defined by the statute, in relevant part, as a person who is unmarried, under the age of 18 years, and who is
a legitimate child, a legally adopted child, a stepchild who is a member of a veteran’s household or was a member at the time of the veteran’s death, or an illegitimate child but, as to the alleged father, only if acknowledged in writing signed by him, or if he has been judicially ordered to contribute to the child’s support or has been, before his death, judicially decreed to be the father of such child, or if he is otherwise shown by evidence satisfactory to the Secretary to be the father of such child.
38 U.S.C. § 101(4)(A) (emphasis added).
The appellant has made no assertion, nor does the evidence of record demonstrate that the appellant and the veteran *211 were ever married, thus excluding the possibility that T.M. could be the veteran’s legitimate child or stepchild. Moreover, because the child was not born before the veteran died, he could not have legally adopted her.
The Secretary has promulgated a regulation implementing the statutory definition of “illegitimate child” of a veteran, which states:
As to the mother of an illegitimate child, proof of birth is all that is required. As to the father, the sufficiency of evidence will be determined in accordance with the facts in the individual case. Proof of such relationship will consist of:
(1) An acknowledgment in writing signed by him; or
(2) Evidence that he has been identified as the child’s father by a judicial decree ordering him to contribute to the child’s support or for other purposes; or
(3) Any other secondary evidence which reasonably supports a finding of relationship, as determined by an official authorized to approve such findings, such as:
(i) A copy of the public record of birth or church record of baptism, showing that the veteran was the informant and was named as parent of the child; or
(ii) Statements of persons who know that the veteran accepted the child as his; or
(iii) Information obtained from service department or public records, such as school or welfare agencies, which shows that with his knowledge the veteran was named as the father of the child.
38 C.F.R. § 3.210(b) (2009).
The appellant does not contend that § 3.210(b) is not a reasonable interpretation of section 101(4)(A). See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (setting forth principles for administrative interpretation of statutes). Rather, the question is whether the Secretary correctly interpreted the regulation he promulgated. In the decision below, the Secretary, by finding the results of the DNA test to be the most probative evidence for a finding of relationship under § 3.210(b), interpreted the regulation as containing a biological element, and the appellant argues this interpretation was incorrect. We note that we are obligated to pay substantial deference to the Secretary’s interpretation of his own regulations, and that his interpretation is “of controlling weight unless it is plainly erroneous or inconsistent with the regulation.” Smith v. Nicholson, 451 F.3d 1344, 1349-50 (Fed.Cir.2006); see also Auer v. Robbins, 519 U.S. 452, 461-62, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (noting that deference must be afforded to an agency’s interpretation of a regulation even where that interpretation is first advanced in a legal brief).
When interpreting regulations, we consider the standard meaning of words. “Without standard word meanings and rules of construction, neither Congress nor the Secretary can know how to write authorities in a way that conveys their intent and no practitioner or — more importantly — veteran can rely on a statute or regulation to mean what it appears to say.” Tropf v. Nicholson, 20 Vet.App. 317, 322 n. 1 (2006). “Illegitimate” is one who is “born of parents not married to each other.” Webster’s New World Dictionary (Webster’s) 672 (3d ed.1988); see also Random House Webster’s Unabridged Dictionary 953 (2d ed.2001) (defining “illegitimate” as “born of parents who are not married to each other; born out of wed *212 lock: an illegitimate child”). “Born of parents” indicates a biological connection between the parents and the child. As such, we are in agreement with the Secretary that the phrase “illegitimate child,” as used in § 3.210(b), encompasses a biological relationship between parent and child.[1]
Importantly, in reading the regulation as a whole, we see no inconsistencies between a prerequisite of a biological relationship and § 3.210(b)’s “sufficiency of the evidence” provision or the evidence listed as “proof of ... relationship,” nor has the appellant demonstrated any such conflicts. See Hilkert v. West, 12 Vet.App. 145, 151 (1999) (en banc) (concluding that appellant had the burden of demonstrating error on appeal). An acknowledgment by the father that he is the father can easily be read as an acknowledgment by the father that he knows himself or believes himself to be the biological father.[2] See 38 C.F.R. § 3.210(b)(1). A judicial decree identifying a man as a child’s father would generally be based on a court finding that that man has been determined to be the biological father of the child. See 38 C.F.R. § 3.210(b)(2).
After noting that “there is no need for any of the Secretary’s requirements to be ‘implied,’” infra at 221, our dissenting colleague finds that the regulation requires that the father must have assumed parental responsibilities in order for a relationship to exist. However, no such requirement appears in the language of the regulation and if it exists, it must be implied. Under § 3.210(b)(1), the father may acknowledge the child in writing. Under § 3.210(b)(3), the father may be listed on public records such as baptism, school, or birth records. This subsection also provides for statements by others that know the veteran accepted the child as his. None of these provisions mention any form of responsibility for an ongoing parental relationship. Only § 3.210(b) references a court order of child support, which admittedly creates an ongoing financial relationship; nevertheless, it does not necessarily demonstrate an ongoing parental relationship as envisioned by the dissent.
Unlike our dissenting colleague, our analysis is not based on the definition of “father.” We are concentrating on the statute’s and regulation’s use of “illegitimate child,” which as stated above, connotes a biological relationship. Although we agree with the dissent that there are many ways that one can establish a paternal relationship with a child that is not one’s biological child, and we in no way mean to devalue those relationships, for a child to be the “illegitimate child” of the person for purposes of § 3.210(b), the child must be “born of’ and therefore biologically linked to the parent. See Webster’s, supra. We are not holding, of course, that there are no means by which a child who is *213 not biologically related is eligible to receive VA benefits; rather, our holding relates only to the “illegitimate child” provision of § 3.210(b). Indeed, it would be contradictory to both the regulation and section 101(4)(A) if we were to hold that a biological relationship is ahvays required for every child seeking VA benefits. To the contrary, subsections (c) and (d) of § 3.210(b) clearly set forth instances that allow for children who are not biologically connected to the veteran to receive VA benefits.[3]
The inclusion of a biological requirement within the term “illegitimate child” as it is used in § 3.210 is also consistent with proposed rule changes to the regulatory scheme at issue in this case. Notably, the proposed rule for establishing status as a child for VA benefit purposes attempts to eradicate use of the terms “legitimate” and “illegitimate.” See Dependents and Survivors, 71 Fed.Reg. 55,-052, 55,069 (proposed Sept. 20, 2006) (“Content of Proposed Regulations”). Rather, the proposed rules indicate that the new regulation will use the term “natural child” to describe both categories of children. Id. “Natural child” means “[a] child by birth, as distinguished from an adopted child ... [a]lso termed biological child.” Black’s Law Diotionary 232-33 (7th ed.1999) (hereinafter Black's). Comments to the proposed rule indicate that “[t]he proposed change in language is not intended to either diminish or enlarge the group of eligible claimants,” a suggestion that the biological requirement is a requirement in both the new and old regulation.
We note finally that requiring a biological component for establishing the necessary relationship under § 3.210(b) not only prevents a situation where benefits must be provided in the absence of any established relationship between a veteran and child, but also ensures that those children who do have a biological connection with a veteran will be able to obtain benefits even in situations where the child was unable to establish a relationship with a veteran by other means.
B. “Proof’ of Relationship
Having found that the regulatory definition of “illegitimate child” inherently encompasses a biological relationship, we next must determine whether it was appropriate for the Board to consider the results of a DNA test. As described, § 3.210(b) sets forth a list of “proof’ of the relationship for establishing that a child is an illegitimate child.
The evidence before the Board consisted solely of (1) statements of friends and relatives of the veteran that aver that he accepted the child as his and (2) the genetic test results obtained and submitted by the appellant. The appellant, noting that a DNA test is not listed in § 3.210(b), asserts that only evidence listed under the designation “proof’ in § 3.210(b) may be considered when VA is determining whether a relationship exists for purposes of the regulation. Accordingly, she maintains that the evidence she provided satisfies the “[p]roof of [a] relationship” to establish the necessary relationship regardless of the DNA evidence of record. We note that, at oral argument, the appellant conceded that *214 the DNA evidence she now argues the Board should not have considered in making its determination was obtained and submitted by her of her own volition and not at the behest of the Secretary.
“Proof’ does not necessarily mean, as the appellant would have us believe, evidence that irrefutably establishes a claim (in this case, the existence of the necessary biological relationship between the child and the father). Rather, proof is also evidence “serving or tending to establish the truth of something.” WebsteR’s at 1077; see also Black’s at 1231 (defining “proof’ as evidence that, when persuasive, determines the judgment of the reviewing body). Examining § 3.210(b), we are persuaded that “proof,” as used in that regulation, introduces a list of evidence that merely “tend[s] to establish the truth” of the necessary relationship. Although we generally consider the standard meaning of words when interpreting a regulation, we will not interpret a term in a regulation so that its reading creates an inconsistency with another part of that regulation. See Roper v. Nicholson, 20 Vet.App. 173, 178 (2006) (VA statutory and regulatory scheme “should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error”) (quoting 2A N. Singer, Sutherland on Statutory Construction, § 46:05 (6th ed.2000)). Here, the term “proof’ includes “[a]ny other secondary evidence which reasonably supports a finding of relationship.” See 38 C.F.R. § 3.210(b)(3). If “proof’ is interpreted to mean evidence that conclusively and irrefutably establishes that relationship (as opposed to evidence that only tends to establish that relationship), the submission of any favorable evidence indicating a relationship would necessarily mandate a finding that an individual is a child for VA benefits purposes, a result that is inconsistent with the regulation’s requirement that is “the sufficiency of evidence will be determined in accordance with the facts in the individual case.” Id.
Moreover, the appellant’s interpretation of “proof’ is wholly inconsistent with this Court’s caselaw that has long held that the Board has a duty to find facts and assess the weight and credibility of the evidence. See Owens v. Brown, 7 Vet.App. 429, 433 (1995). Thus, in order to give meaning to the sufficiency-of-evidence provision in § 3.210(b) and in keeping with this Court’s caselaw, we hold that a claimant cannot irrefutably establish that a child is an illegitimate child of a veteran merely by proffering any of the evidence listed under “proof’ in that regulation. See King v. St. Vincent’s Hosp., 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) (holding that when interpreting a statute [or regulation], the court is required to look at the context and provisions of law as a whole); Splane v. West, 216 F.3d 1058, 1068-69 (Fed.Cir.2000) (“Canons of construction ... require us to give effect to the clear language of a [regulation] and avoid rendering any portions meaningless or superfluous.”); Owens, supra. Thus, we conclude that because an illegitimate child must be biologically related to his parents, it was not inappropriate for the Board to consider evidence related to the question of that biological relationship, i.e., the DNA test results.
Our dissenting colleague relies a great deal on the regulatory history of § 3.210 but fails to acknowledge that the history he relies on is from a time when DNA was not considered as reliable or acceptable as it is today. He maintains that the regulation was “originally founded on the basis of parental relationship instead of biological requirement.” Infra at 226 (emphasis *215 added). However, as described, illegitimacy connotes a biological relationship, and as early as 1927, the regulation included the provision that proving a relationship to a veteran “shall be shown by the best evidence obtainable.” Veterans Bureau Regulation 178 § 33(a)-(d) (Aug. 25, 1927). We can think of no better way than a DNA test to establish that a biological connection is present. The results of DNA tests are now widely recognized as a reliable and accurate method for establishing biological paternity. See Tipps v. Metro. Life Ins. Co., 768 F.Supp. 577, 579 (S.D.Tex. 1991) (“Scientific paternity testing ... is now a well established and accepted method of determining whether a specific individual is a child’s biological father.”); Estate of Sanders, 2 Cal.App.4th 462, 3 Cal.Rptr.2d 536, 544 (1992) (noting that “only the proverbial ostrich with its head in the sand would dispute” the remarkable advances in DNA technology in removing the uncertainty of proving paternity). “Congress itself has acknowledged that genetic testing is extremely reliable.” Miller v. Christopher, 96 F.3d 1467, 1474-75 (D.C.Cir.1996); H. Rep. No. 527, 98th Cong., 1st Sess., at 38 (1983). Reliability has been recognized even in cases where the testing is of the genetic material of a collateral party, such as a decedent’s relative. See Tipps, 768 F.Supp. at 579-80 (finding that DNA evidence from living relatives could be used in determining whether a biological relationship existed). Moreover, the vast majority of cases we have reviewed indicate that courts are strongly in favor of determining biological paternity by use of DNA tests. See id. at 580 (noting that Texas courts have accepted DNA technology); Alexander v. Alexander, 42 Ohio Misc.2d 30, 537 N.E.2d 1310, 1314 (Ohio Prob.1988) (noting that the “accuracy and infallibility of the DNA test are nothing short of remarkable”). Indeed, to obtain a judicial decree of paternity in Georgia, the state in which T.M. was born, there is a “rebuttable presumption of paternity of a child born out of wedlock if there has been performed scientifically credible parentage-determination genetic testing which establishes at least a 97 percent probability of paternity.” Ga. Code Ann. § 19-7-46(b) (2008).
In this instance, DNA has provided the best evidence now obtainable for establishing a veteran is the father of an illegitimate child, and DNA evidence, where presented, can be considered when determining the sufficiency of evidence in accordance with the facts in that individual case. As our dissenting colleague notes, the Secretary has the authority to update regulations as he sees fit, and perhaps he will wisely undertake to explicitly address DNA testing at some point, but that is not necessary for our holding here today.
In summary, VA may consider the results of a DNA test when determining whether a child is an “illegitimate child” for purposes of the regulation. We do not hold that VA must always rely exclusively on the results of a DNA test, as the relationship may be proven by other evidence. We also do not hold that VA can require a claimant to submit to a DNA test.
C. Reasons and Bases
When deciding a matter, the Board must include in its decision a written statement of the reasons or bases for its findings and conclusions, adequate to enable an appellant to understand the precise basis for the Board’s decision as well as to facilitate review in this Court. See 38 U.S.C. § 7104(d)(1); Allday v. Brown, 7 Vet.App. 517, 527 (1995); Gilbert v. Derwinski, 1 Vet.App. 49, 56-57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersua *216 sive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Caluza v. Brown, 7 Vet.App. 498, 506 (1995); Gilbert, 1 Vet.App. at 57.
The appellant maintains that the Board failed to provide an adequate statement of reasons or bases for determining that the lay testimony submitted by the appellant was less probative than the DNA test results. Appellant’s Br. at 11. Contrary to the appellant’s contention, the Board considered and discussed all of the favorable evidence in the record including the lay statements submitted by the appellant. R. at 6-7. The Board found that the evidence against the appellant’s claim consisted of T.M.’s birth certificate that did not list the veteran as her father, a VA hospital report that stated the veteran was hospitalized from January 14, 1992, to February 18, 1992, and the DNA report demonstrating the very low probability that the veteran was T.M.’s biological father. R. at 6. The Board concluded that based on the facts in this case, the favorable lay statements were less probative than the DNA test results, and thus, found the preponderance of the evidence was against recognizing T.M. as the veteran’s child for VA benefits purposes. R. at 7.
In this case, the appellant has not disputed the accuracy or reliability of the DNA test. As described above, the evi-dentiary concerns in a paternity finding are largely eliminated by the use of DNA testing, and thus, we hold that the Board properly considered the results of the DNA test when weighing the sufficiency of the evidence in this case. See 38 C.F.R. § 3.210(b). Moreover, as stated above, the Board discussed all the relevant evidence in the record and weighed it accordingly. R. at 6-7. As such, the Board provided a statement of reasons or bases adequate to enable the appellant to understand the precise basis for the Board’s decision as well as to facilitate review in this Court. See Allday and Gilbert, both supra. Accordingly, that decision will be affirmed.
IV. CONCLUSION
After consideration of the appellant’s and the Secretary’s pleadings, and a review of the record, the Board’s March 22, 2007, decision is AFFIRMED.
SCHOELEN, Judge, filed the opinion of the Court. HAGEL, Judge, filed an opinion concurring in the result and dissenting in part.

. Our dissenting colleague cites to a variety of legal and general use dictionaries in an effort to show that the term "illegitimate child” has nothing to do with the relationship between the child and his or her biological parents. However, even using the definitions of the term he cites to (most of which define "illegitimate child” as “a child born out of wedlock”), it is clear that the term describes more than just the child himself or herself — it also implicitly describes the relationship between the child and his or her biological parents. After all, the reason the child is "born out of wedlock” is because his or her biological parents were not married to each other.

. Such a reading is consistent with the Uniform Parentage Act, which as to "acknowledgment of paternity” provides that "[t]he mother of a child and a man claiming to be the genetic father of the child may sign an acknowledgment of paternity with intent to establish the man’s paternity.” Uniform Parentage Act (UPÁ) (amended 2002) § 301 (emphasis added).

. It appears as though VA has previously required a biological element under section 101(4). In Burch v. Brown, the Court affirmed a Board decision that noted that dependent children in question were not living in the veteran's household at the time of his death or adopted by the veteran and found that because the children were "not the biological children of the veteran” that "they [did] not fall within the purview of the VA’s definition of 'child' for the purposes of improved death pension benefits." 6 Vet.App. 512, 513 (1994).