DAVIS, Judge,
with whom SCHOELEN, BARTLEY, and GREENBERG, Judges, join, concurring in part and dissenting in part:
We agree with Part II.B and Part II.C of the majority opinion. We also agree with the majority’s conclusion that the language of § 3.157 is not clear with respect to the issue presented in this case. Ante at 25-26 We respectfully dissent, however, from the majority’s conclusion in Part II.A that the Court must defer to the Secretary’s regulatory interpretation. Because the agency interpretation in this case overlooks and fails to provide a reasonable interpretation of the regulation’s language, does not represent the Secretary’s considered view, and does not resolve the patent ambiguity in the regulation in favor of the veteran, we would accord it no deference. See Mason v. Shinseki, 743 F.3d 1370 (Fed.Cir.2014) (faced with an ambiguous regulation, the Court will give substantial deference to an agency’s interpretation when it is (1) not clearly inconsistent with the regulation and (2) represents the agency’s considered view on the matter); see also Brown v. Gardner, 513 U.S. 115, 118, *37 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) (“interpretive doubt is to be resolved in the veteran’s favor”).
The Secretary believes a “parallel structure” reading of § 3.157(b) essential to his interpretation. He contends that under this parallel structure, the first part of the first sentence of § 3.157(b) addresses two types of formal claims: (1) “a formal claim for pension or compensation that has been allowed,” and (2) “a formal claim for compensation or pension that has been disallowed.” Secretary’s Motion (Mot.) for En Banc Review at 13 (quoting § 3.157(b)). The second part of the sentence states that receipt of one of the specified medical reports will be accepted as (1) “an informal claim for increased benefits” or (2) “an informal claim to reopen.” Id. According to the Secretary, the first phrase in the first part of the sentence is paired with the first phrase in the second part of the sentence, and the second phrase in the first part of the sentence is paired with the second phrase in the second part. “This is the most logical reading,” the Secretary contends, “because it is most logical to pair language regarding an ‘informal claim to reopen’ with language regarding a claim that was denied rather than with language regarding a claim that was allowed.” Mot. for En Banc at 4.
Under the Secretary’s interpretation, a veteran receiving disability compensation for a particular disability, thus falling into the “allowed” parallel, may file an informal claim for an increased rating for the service-connected disability. A veteran previously granted pension benefits, thus falling into the “allowed” parallel, may file an informal claim for increased pension benefits. A veteran who filed a claim for disability compensation that was “disallowed,” thus falling into the “disallowed” parallel may file a “reopened” claim, but only if his or her claim was “disallowed” because it was noneompensable under the schedule for rating disabilities. The Secretary contends that under § 3.157(b), these are the only circumstances under which a medical record may constitute an informal claim for increase or to reopen. See Mot. for En Banc at 6.
This construction would render superfluous the last phrase of the last sentence in § 3.157(b)(1). See Roper v. Nicholson, 20 VetApp. 173, 178 (2006) (noting that a regulation must be interpreted “so that effect is given to all its provisions”). The final sentence of § 3.157(b)(1) states that the regulation applies “when such reports relate to examination or treatment of a disability for which service-connection has previously been established or when a claim specifying the benefit sought is received within one year from the date of such examination, treatment or hospital admission.” (Emphasis added.) The regulation’s use of the disjunctive “or” signifies “alternative components.” McDowell v. Shinseki, 23 Vet.App. 207, 220 (2009); see Drosky v. Brown, 10 Vet.App. 251, 255 (1997) (“The use of the word ‘or’ provides for an independent basis rather than an additional requirement.”); see also Viegas v. Shinseki, 705 F.3d 1374, 1378 (Fed.Cir.2013) (observing that a court should “eschew[ ] a ‘strained construction’ of a- statute that ‘would ... ignore the disjunctive “or” ’ contained in the statutory text”).
Yet the Secretary’s contention that § 3.157(b) applies “only ... to claims for compensation that relate to previously service-connected disabilities” (Mot. for En Banc at 14 (emphasis added)) reads out the alternative situation in which this regulatory section is applicable, namely, “when a claim specifying the benefit sought is received within one year from the date of such examination, treatment, or hospital admission.”[11] If, as the Secretary urges, *38 previous establishment of service connection were an indispensable requirement, then the language after “or” in § 3.157(b) is mere surplusage.
Such an interpretation is not permissible. The Secretary makes no effort to offer an explanation of how he interprets the last phrase of the last sentence in § 3.157(b)(1), or how this sentence falls within the parallel structure of the regulation that he advocates.
Thé Secretary’s construction also fails to acknowledge § 3.157(b)’s use of the broad phrase “increased benefits” or explain why that broad language could not include Mr. Pacheco in the first parallel of the regulation’s parallel structure. Under the Secretary’s interpretation, the first parallel consists of veterans previously allowed compensation or pension who seek “increased benefits.” 38 C.F.R. § 3.157(b) (“Once a formal claim for pension or compensation has been allowed ... receipt of one of the following will be accepted as an informal claim for increased, benefits”) (emphasis added). Mr. Pacheco claims that his May 2001 treatment report should be considered an informal claim for “increased benefits” because he was previously allowed pension and is therefore part of the “allowéd” parallel.
The Secretary argues that the May 2001 treatment report cannot be an informal claim for increased benefits because he interprets the broad phrase “increased benefits” as restricted to increased compensation benefits in the case of veterans previously denied compensation and increased pension benefits in the case of veterans previously denied pension. Mot. for En Banc at 5-6. He argues that § 3.157(b) should not be interpreted to “pair” an allowed claim for pension with a claim for increase related to disability compensation. However, his own interpretation of the regulation would “pair” compensation and pension claims, requiring a veteran seeking increased pension benefits to' show that'he or she receives service-connected compensation.
Under the Secretary’s construction of the regulation, which ignores the phrase beginning with “or” in the last line of § 3.157(b)(1), a veteran such as Mr. Pacheco, who was previously allowed non-service-connected pension and who wishes to obtain the earliest possible effective date of increased benefits under § 3.157(b), must show that the medical report “relate[s] to examination or treatment of a disability for which service connection has previously been established.” 38 C.F.R. § 3.157(b)(1). See VA Compensation and Pension Regulation Rewrite Project, 78 Fed.Reg. 71,042, 71,069 (Nov. 27, 2013) (VA concedes that the § 3.157(b)(1) requirement that a report relate to a service-connected disability improperly imposes a service-connection requirement as to claims for increased pension). VA having admitted that § 3.157(b)(1) forces increased pension claimants to show their disability is service connected, the Secretary is hoisted on his own petard: The flaw he identifies in Mr. Pacheco’s interpretation, the pairing of compensation and pension claims, is integral to the Secretary’s interpretation of the current regulation.
In addition, a close inspection of the Secretary’s interpretation raises concerns about the “disallowed” parallel of the regulation, a “claim for compensation disallowed for the reason that the service-connected disability is not compensable in *39 degree.” 38 C.F.R. § 3.157(b). Over 20 years ago, in 1993, the Secretary indicated that it was not his practice to deny a claim for disability compensation when a disability was noncompensable; rather, he stated that “it has been VA’s consistent practice to [grant and] assign a zero percent evaluation whenever the [service-connected] condition does not meet the stated minimum requirements for com-pensable evaluation.” Zero Percent Disability Evaluations, 58 Fed.Reg. 28,808, 28,808-09 (May 17, 1993) (emphasis added) (proposing to amend 38 C.F.R. § 4.31). The Secretary more recently indicated that, historically, VA would grant service connection and assign a noncom-pensable evaluation but “consider[]” or construe such a claim to be disallowed or denied. 78 Fed.Reg. at 71,069 (‘VA formerly considered claims where VA granted semce connection for an injury or disease, but rated the disability as 0 percent disabling!,] as having been disallowed or denied.” (emphasis added)).
In contrast, however, Technical Bulletin 8-180, which VA cites for this proposition, indicates that such a claim would actually have been disallowed. See Claims for Increase and Reopened Awards, Technical Bulletin 8-180, ¶ 4 (Jun. 13, 1951) (“Where a claim has been finally disallowed for the reason that the service-connected condition was not 10% disabling in degree, ... the report of hospitalization constitutes an informal claim to reopen”). Also, our colleagues in the majority cite a 1952 regulation, 38 C.F.R. 3.216(a), which the Secretary does not mention in his'brief or his en banc motion, and conclude that “unlike the old practice, where a claim disallowed for the reason of not being compensable in degree had to be reopened when a claimant sought a compensable rating, the current practice is to allow a claim for increase in such circumstances.” Ante at 27. However, the majority’s view and the statement in Technical Bulletin 8-180 contradict the Secretary’s 1993 Federal Register statement that its “consistent practice” was to grant service connection and assign a noncompensable evaluation and the Secretary’s 2013 Federal Register statement that VA granted service connection but “considered” or construed it as a denial or disallowance.
In other words, the Secretary’s interpretation of the regulation has been anything but consistent. These contradictory views of the “disallowed” parallel of the regulation cast additional doubt on the Secretary’s interpretation of the regulatory language, and the majority’s attempt to synthesize the history and meaning of the “disallowed” parallel on the Secretary’s behalf falls short.
It is also troubling that the “disallowed” parallel is, at the very least, an anachronism based on an arcane view of the law, which the Secretary uses to support his denial of benefits. This Court has held for over 20 years that a claim for a higher disability rating is a new claim for an increased rating and not a claim to reopen. See Proscelle v. Derwinski, 2 Vet.App. 629, 631 (1992) (“[The] claim for an increased rating presently on appeal is not a reopened claim subject to the requirement that there be ‘new and material’ evidence to justify reopening under 38 U.S.C. § 5108, because the veteran claims that his service-connected disability has undergone an increase in severity since that prior claim. The current claim is thus a new claim.” (citations omitted)); Sears v. Prindpi, 16 Vet.App. 244, 251-52 n. 2 (2002) (Steinberg, J. concurring) (collecting cases).
Moreover, we conclude that the Secretary’s interpretation, offered for the first time in his motion for en banc review, does not represent his established or considered *40 view on the matter. See Reizenstein v. Shinseki, 583 F.3d 1331, 1335 (Fed.Cir.2009). Notably, the Secretary quotes a November 2013 Federal Register Notice of Proposed Rulemaking where he claims that he has never once applied § 3.157(b) to a case to allow reopening of a claim where service connection was previously denied. Mot. for En Banc at 10. The 2013 Federal Register also includes a statement by VA that there was no reason after 1962 to allow a medical record to serve as a claim for an increase such that a claimant could seek increased benefits for a condition that had not been previously service connected. 78 Fed.Reg. 71,042, 71,069 (Nov. 27, 2013). Yet, in 1987, when the Secretary proposed adding the last sentence in § 3.157(b)(1), his Federal Register comments stated that the sentence was added to clarify that an examination could serve as an informal claim either when service connection had already been established “or” when a formal claim is filed within one year. Medical Reports as Informal Claims/Recoupment of Separation Pay, 52 Fed.Reg. 3,286, 3,286 (Feb. 3, 1987).
Additionally, the Administrator of the Veterans Administration[12] issued Transmittal Sheet 744 to “inform all concerned why these changes to [§ 3.157(b)(1)] are being made.” He stated:
Informal claims must reasonably identify the benefit sought, and reports of examination or treatment of a disability for which service-connection has not yet been established do not justify an assumption that service-connection is being claimed. On the other hand, if service-connection has already been established for a disability, a report of examination or treatment for that disability does justify an assumption by the VA that the veteran seeks increased compensation for that disability.
Id. (emphasis added). The transmittal sheet issued by the Administrator clearly indicates that the regulation was amended in 1987 to include the requirement that a veteran identify the benefit sought because a medical report could not constitute a claim for service connection for a new condition unless the veteran identified the benefit sought. By contrast, such-a requirement was unnecessary when the veteran was seeking increased compensation for a disability for which he was already service connected.
The majority relies on a 1961 amendment to § 3.157(b)(1) to conclude that VA’s “desire [was] to allow earlier effective dates for those whose previously service-connected conditions] worsened, but not those who had yet to establish service connection.”[13] Ante at 26. However, in doing so, the majority does not consider properly the significance of the 1987 amendment — the Secretary’s most recent finally adopted substantive amendment to the regulation. Unfortunately, the majority’s discussion of the 1987 amendment is inaccurate and creates an erroneous impression that in 2013 VA explained the purpose of the 1987 amendment. According to the majority, in 2013 VA stated that § 3.157(b) was amended in 1987 to clarify that the agency’s pre-1962 view — that a medical record could constitute .an informal claim for service connection for a disability — -was extinct.[14] Ante at 28 n. 5.
*41 In fact, VA’s 2013 comments to the proposed amendment to § 3.157(b) do not include any discussion regarding the 1987 amendment. The only statement made by VA regarding the purpose of the 1987 amendment is the contemporaneous statement made by the Administrator in the transmittal sheet. His comments demonstrate that VA did not consider its pre-1962 view to be extinct. Indeed, the Administrator’s comments show that the 1987 amendment was intended to make clear that the regulation was to apply to claims for service connection for new conditions and not merely to claims for increases for disabilities already service connected.[15] Thus, the 1987 amendment shows that the Secretary’s interpretation in his en banc motion reads out of existence not only the very language he specifically sought to add in 1987, but completely disregards VA’s expressed intent in explaining the reason for the amendment. In sum, the 1987 amendment and the Administrator’s transmittal sheet show that the Secretary’s current interpretation is not entitled to deference because it is blatantly inconsistent with his past interpretations and does not represent an established, fair, or considered view of the regulation.
We are also disturbed that the Secretary’s proffered position in his motion for en banc review contradicts the position he took earlier in this same case. In 2010, Mr. Pacheco appealed an earlier Board decision on this same issue to this Court. At that time, the Secretary urged the Court to remand the case for the Board to address § 3.157(b). In urging remand, the Secretary stated:
The May 2001 VA treatment note is dated within one year of [a]ppellant’s January 23, 2002, claim to reopen [his claim for service connection]. However, in the decision on appeal, the Board did not discuss or consider whether 38 C.F.R. § 3.157(b) should be applied in assigning an effective date for the grant of service connection.
Secretary’s Br. at 11, in No. 10-1991 (emphasis added); see Pacheco v. Shinseki, No. 10-1991, 2011 WL 2516195, at *2-*3 (U.S. Vet.App. June 24, 2011). Contrary to his current contention that Mr. Pacheco’s May 2001 treatment report may not be the basis of an earlier effective date under § 3.157(b)(1) because his leg and hip conditions were not service connected in 2001, the Secretary in 2010 clearly viewed that report as an attempt to reopen his claim for service connection and urged this Court at that time to remand for consideration of § 3.157(b).
The majority states that no significance should be attached to the Secretary’s previous motion for a remand because he was merely ensuring that the Secretary discussed all potentially applicable regulations. Ante at 27-28. Yet, according to *42 the majority’s opinion and the interpretation posited in the en banc motion, there was no reason whatsoever to conclude that this regulation was potentially relevant because the veteran had not been denied service connection because his claimed disabilities were noncompensable. If the Secretary’s current interpretation is correct, then any error in failing to discuss § 3.157(b) would have been harmless, and there would have been no valid reason to persuade this Court that a Board decision should be vacated and remanded. See 38 U.S.C. § 7261(b)(2); see also Soyini v. Derwinski, 1 Vet.App. 540, 546 (1991) (holding that remand is not warranted when it “would result in this Court’s unnecessarily imposing additional burdens on the [Board] with no benefit flowing to the veteran.”). Accordingly, these circumstances counsel against concluding that the Secretary’s current view represents his established view on this matter.
We must also dissent from the majority opinion because it fails to resolve interpretive doubt in favor of the veteran, as we are bound to do under Gardner, 513 U.S. at 118, 115 S.Ct. 552. We are mindful that veterans “cannot rely upon the generous spirit that suffuses the law generally to override the clear meaning of a particular provision.” Boyer v. West, 210 F.3d 1351, 1355 (Fed.Cir.2000). However, neither can the Secretary espouse a heretofore unwritten and unsupported regulatory interpretation to resolve ambiguity in a regulation in a manner unfavorable to the veteran. Gardner, 513 U.S. at 118, 115 S.Ct. 552; Disabled Am. Veterans v. Gober, 234 F.3d 682, 692 (Fed.Cir.2000) (traditional Chevron analysis is modified by the doctrine that interpretive doubt is to be resolved in the veteran’s favor); see also Comer v. Peake, 552 F.3d 1362, 1369 (Fed.Cir.2009) (“The VA disability compensation system is not meant to be a trap for the unwary, or a stratagem to deny compensation to a veteran who has a valid claim.... ”).
In sum, we believe that deference to the Secretary is not appropriate here because his interpretation of § 3.157(b) is inconsistent with and overlooks portions of the regulation’s language and structure, does not represent his considered view on the matter, and does not resolve the provision’s ambiguity in the veteran’s favor. For the reasons set forth in the January 16, 2014, panel opinion, we would reverse the Board decision and order the Board, pursuant to § 3.157(b), to grant an effective date of May 11, 2001, for the award of service connection for a right leg and hip disability. Although we agree that § 3.157(b) is ambiguous, we respectfully dissent from the remainder of Part II.A of the per curiam opinion.

. The majority says that the last part of subsection (b)(1) applies to "when ... a *38 claimant who has a previous allowance of pension files a claim for increased pension.” Ante at 28. This is diametrically counter to the Secretary’s interpretation that this only applies to claims for compensation that relate to previous service connection denials.

. The Department of Veterans Affairs was established on March 15, 1989, to succeed the Veterans Administration, which was headed by an Administrator.

. It is noteworthy that the Secretary’s en banc motion fails to discuss the history of the regulation and its evolution. This failure by the Secretary puts the Court at a disadvantage.

. We observe the Secretary’s statement in the Federal Register that the last sentence of § 3.157(b)(1), the sentence at issue in this case, addressed a statutory provision repealed in 1962. VA Compensation and Pension Regulation Rewrite Project, 78 Fed.Reg. 71,042, 71069 (Nov. 27, 2013). Yet, he added the last sentence of § 3.157(b)(1) in 1987. It is incomprehensible to us that the Secretary would add the last sentence of § 3.157(b)(1) to the regulation in 1987 to address a statute that was repealed in 1962.

. The majority also states that it does not read the transmittal sheet "as conveying the Administrator's intention to contravene the plain language of the regulation, which expressly limits the applicability of § 3.157(b) to claims for increase or claims to reopen.” Ante at 28, n. 5. This is puzzling because the majority explained earlier that the language of the regulation was ambiguous and that this was the reason it was deferring to the Secretary's interpretation expressed in his motion. Ante at 25-26.