Citation Nr: 1508835 
Decision Date: 02/27/15 Archive Date: 03/11/15

DOCKET NO. 10-21 556 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Huntington, West Virginia


THE ISSUES

1. Entitlement to service connection for right kidney cancer, as a result of exposure to herbicides.

2. Entitlement to an initial rating higher than 50 percent for posttraumatic stress disorder (PTSD).


ATTORNEY FOR THE BOARD

T. Adams, Counsel


INTRODUCTION

The Veteran served on active duty from March 1969 to October 1970.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a July 2009 decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Huntington, West Virginia. This case was remanded by the Board in December 2012 for further development and the claim for service connection for right kidney cancer is now ready for disposition

The Veteran was previously represented by attorney David L. Huffman; however, VA cancelled his accreditation. In December 2014, the Board notified the Veteran that Mr. Huffman's authority to represent VA claimants had been revoked and provided him with an opportunity to appoint another representative. He was notified that if he failed to respond within 30 days, it would be assumed that he wished to represent himself. He failed to respond. Therefore, the Board assumes he wishes to proceed with his appeal pro se.

This appeal was processed using the Virtual VA and Veterans Benefits Management System (VBMS) paperless claims processing systems. Accordingly, any future consideration of this Veteran's case should take into consideration the existence of these electronic records.

The issue of entitlement to an initial rating higher than 50 percent for PTSD is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

The Veteran's right kidney cancer, did not manifest during his service, may not be presumed to have resulted from the Veteran's exposure to herbicides, and is not a result of his active military service, to include exposure to herbicides, from October 1969 to October 1970.


CONCLUSION OF LAW

The criteria for service connection for right kidney cancer, to include as due to Agent Orange exposure, are not met. 38 U.S.C.A. §§ 1110, 1112, 1113, 1116, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2014); Combee v. Brown, 34 F.3rd 1039 (Fed. Cir. 1994).


REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran contends that he suffers from right kidney cancer as a result of exposure to Agent Orange during service.

Under the relevant laws and regulations, service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131 (West 2002). Generally, the evidence must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1166 -67 (Fed. Cir. 2004); Caluza v. Brown, 7 Vet. App. 498, 505 (1995).

Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third Shedden/Caluza element is through a demonstration of continuity of symptomatology if the disability claimed qualifies as a chronic disease listed in 38 C.F.R. § 3.309(a). Regulations also provide that service connection may be granted for a disability diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability is due to disease or injury which was incurred in or aggravated by service. 38 C.F.R. § 3.303(d).

In addition, for certain chronic diseases, such as a malignant tumor, a presumption of service connection arises if the disease is manifested to a degree of 10 percent within one year following discharge from service. 38 C.F.R. §§ 3.307, 3.309(a). When chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support a claim for such diseases. 38 C.F.R. § 3.303(b); see Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Diseases associated with exposure to certain herbicide agents used in support of military operations in the Republic of Vietnam (Vietnam) during the Vietnam era will be considered to have been incurred in service. 38 U.S.C.A. § 1116(a)(1). The presumption requires exposure to an herbicide agent and manifestation of the disease to a degree of 10 percent or more within the time period specified for each disease. 38 C.F.R. § 3.307(a)(6)(ii). However, as the Veteran is aware, these diseases do not include kidney cancer. 38 C.F.R. § 3.309(e); see Notice, 75 Fed. Reg. 168, 53202-16 (Aug. 31, 2010).

The absence of a disease from the presumptive list does not preclude a veteran from otherwise proving that his disability resulted from exposure to Agent Orange or otherwise linking his carcinoma to service. Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994). Accordingly, the Board will still consider whether entitlement to service connection can be granted on a direct basis for the kidney cancer.

With regard to the first Hickson element, medical evidence of a current disability, private treatment records include a June 2007 which indicates a diagnosis of cancer of the right kidney. Accordingly, a current disability is demonstrated.

With respect to the second Hickson element, in-service disease or injury, the Veteran served in Vietnam during the Vietnam War and thus, as noted above, his exposure to herbicides is conceded. The second Hickson element is therefore met as to an in-service injury.

Turning to the evidence of record, the Board observes that post-service treatment records include a March 2005 Agent Orange report which include prostate and gastrointestinal symptoms which were found to be unrelated to Agent Orange exposure.

Private treatment records include a May 2007 report which states that a cross-sectional imaging study revealed a 4 centimeter enhancing mass on the right kidney which was thought to be a neoplasm. In June 2007, the Veteran underwent a laparoscopic radical nephrectomy. However, none of the post-service treatment records relate the Veteran's right kidney cancer to his service, including exposure to herbicides.

With regard to presumptive service connection based on the diagnosis of a malignant tumor within one year following separation from service, the Veteran was not diagnosed with any such disability within one year of separation from service. Accordingly, presumptive service connection is not warranted for a malignant tumor of the right kidney.

In sum, the Board acknowledges both that the Veteran has a current diagnosis of right kidney cancer and that and that he was exposed to herbicides while serving in Vietnam. In this case, the Board finds that the weight of the competent evidence does not attribute the Veteran's right kidney cancer to active duty. 

In this regard, in April 2008 the Veteran submitted a March 2008 opinion from private treating physician who treated him for cancer and was aware of the Veteran's history of exposure to Agent Orange. He opined that it is "certainly possible that toxic chemicals could play a role in the development of kidney cancer. There is literature connecting kidney cancer with various toxic chemicals." 

The Veteran also submitted a November 2010 private medical opinion from Medical Associates of Glen Daniel based on a review of the Veteran's military and medical history. The physician indicated that he/she had the opportunity to review the list of contents contained in the herbicide sprayed during the Vietnam War and stated that "many of the contents of the herbicides are carcinogens and have been proven to cause various cancers or diseases." The physician stated that the Veteran's history of risk factors for renal cell carcinoma were considered and indicated review of a list of ingredients causally linked to the Veteran's specific cancer or disease. The physician reviewed "relevant research provided on the carcinogens present in the herbicide used during the Vietnam War and their link to the type of cancer or disease the Veteran has contracted." Finally, the physician considered a March 2005 Board decision that granted entitlement to service connection for renal cell carcinoma, to include as residual to exposure to Agent Orange, and considered the Veteran's history of risk factors. 

On these bases, the physician opined, "As a result of reviewing the Veteran's entire medical situation and considering the Veteran's risk factors of renal cell carcinoma, it is my opinion with reasonable medical certainty that it is as least as likely as not (at least 50/50) that the Veteran's history of herbicide exposure while in Vietnam was a substantial factor in consideration towards the causing of renal cell carcinoma."

The March 2005 Board decision which granted service connection for renal cell carcinoma was based on a review of positive and negative nexus opinions which were determined to be in relative equipoise. These opinions included an April 1999 opinion from Dr. Adams, a pathologist certified in Anatomic Pathology and Laboratory Medicine, with a Master of Science degree in Air Pollution Toxicology, who noted that most renal cell carcinomas appeared in the sixth and seventh decades of life, and, in his 26 years of practice, he had never encountered a patient with renal cell carcinoma at such a young as the Veteran. The Veteran in that case was only 38 years of age when diagnosed with renal cell carcinoma. On this basis, he opined that the Veteran's exposure to Agent Orange was a "likely cause" of his renal cell carcinoma. In March 2004, Dr. Anderson, a board-certified oncologist considered the Veteran's risk factors for renal cell carcinoma, including his history of smoking, but opined that it was more likely than not that his cancer was caused by Agent Orange exposure. In March 2004, Dr. Brauch, Section Head, Molecular Mechanisms of Origin and Treatment of Breast Cancer at a German institute commented that "[t]he [V]eteran developed clear cell renal carcinoma a disease normally incurred by older patients, at the unusually young age of 38." After performing a molecular analysis of the Veteran's kidney tissue, the physician opined that the Veteran's kidney cancer was due to environmental exposure. On VA examination in October 2000, the examiner opined that the Veteran's renal cell carcinoma was not related to his exposure to Agent Orange. A December 2001 IME was obtained from Dr. Walsh, an Assistant Professor of Medicine in the Division of Hematology Oncology who opined that there was no substantial evidence to support a link between the Veteran's renal cell carcinoma and Agent Orange exposure.

Pursuant to the Board's December 2012 remand, the Veteran underwent a VA Disability Benefits Questionnaire (DBQ) kidney conditions (nephrology) examination in March 2013 at which time the examiner noted a June 2007 diagnosis of renal cell carcinoma status post laparoscopic right radical nephrectomy. After conducting an in-person examination, the examiner opined that the claimed condition was less likely than not incurred in or caused by the claimed in-service injury, event, or illness based, in part, on the rationale that the Veteran's service treatment records are negative for treatment of a kidney condition. An October 1970 separation examination indicated a normal genitourinary system and the Veteran reported that he was in good health. The examiner stated that the risk factors for renal cell carcinoma include smoking, obesity, hypertension, age and occupational exposure to toxic compounds such as cadmium, asbestos, and petroleum by-products. However, the examiner stated that studies of occupational exposures are often limited by the lack of specific exposure details. She cited to a study by the VAMC in Shreveport which examined records of 297 patients diagnosed with kidney cancer and thirteen of the patients said that they were exposed to Agent Orange. Documentation of exposure to the herbicides and pathology reports were available for 10 of the patients. The conclusion was that "these data indicate that we may need to better determine whether exposure to those chemicals should be considered a risk factor for kidney cancer."

The examiner also reviewed the November 2010 private physician's opinion but opined that a review of medical literature indicates that there is no study to support cause and effect relationship between Agent Orange exposure and the development of kidney cancer. The examiner concluded that it is less likely as not that the Veteran's kidney cancer is related to his period of service, to include as a result of exposure to Agent Orange in service.

In this regard, the Board finds that the March 2013 VA medical examination and opinion provide highly probative evidence against the claim. After reviewing the claims file and considering the Veteran's documented and reported history; performing a physical examination; reviewing medical research and a VAMC study involving kidney cancer and veterans exposed to Agent Orange; and considering the November 2010 private medical opinion, the examiner concluded that the Veteran's right kidney cancer was not related to his service. The examiner provided a conclusion with a sufficient rationale. Therefore, the VA medical examination and opinion provides probative evidence against the Veteran's claim of high probative weight. See Nieves -Rodriguez v. Peake, 22 Vet. App. 295 (2008).

The Board has considered the March 2008 opinion from private physician Dr. W.L.P. which indicates that it is "certainly possible" (which the Board would not dispute - that is not, however, the standard the Board can grant such a claim) that toxic chemicals contributed to the development of the Veteran's kidney cancer. However, the probative value of this "positive" opinion is limited. Significantly, this opinion is highly speculative in nature. It is well-established that a speculative opinion cannot be used to establish a claim for benefits. See Stegman v. Derwinski, 3 Vet. App. 228 (1992) (held that did little more than suggest a possibility that his illnesses might have been caused by service radiation exposure was insufficient to establish service connection).

With regard to the November 2010 opinion, the physician opined without examining the Veteran that based on a review of the Veteran's entire medical situation and considering his risk factors for renal cell carcinoma, it is as least as likely as not that the Veteran's history of herbicide exposure while in Vietnam was a "substantial factor" in consideration towards the causing of renal cell carcinoma. However, it is unclear which factors in addition to Agent Orange exposure, the physician considered in his opinion as the physician failed to identify those other factors. Therefore, the opinion is incomplete as it failed to discuss the Veteran's other contributing factors to the development of kidney cancer. The fact that the "examiner" never examined the Veteran leaves trepidations regarding the overall validity of this result. 

Moreover, the physician heavily relied on a March 2005 Board decision in his opinion the facts of which are highly distinguishable from the facts in this case, for reasons cited above. In this regard, the Board notes that previous Board decisions are not precedential, and are not binding on Board decisions in other cases. 38 C.F.R. § 20.1303 (2014); McDowell v. Shinseki, 23 Vet. App. 207, 228 (2009). As previously stated, the March 2005 decision granted service connection based on a details review of positive and negative nexus opinions which the Board found were in relative equipoise and granted the claim. One of the main factors that distinguish the 2005 decision from the present case is the age at which the Veteran in the prior decision was diagnosed with renal cancer. In that case, the medical professionals were struck by the fact that the Veteran was only 38 when diagnosed which is rare for renal cancer. In the instant case, the Veteran was first diagnosed at age 58. 
The fact that the November 2010 private physician relied on a Board decision that is factually distinguishable from the Veteran's case further lessens its probative value, as it is partly based on facts that are specific to another Veteran's medical history and history of exposure to Agent Orange-an inaccurate factual premise. See Reonal v. Brown, 5 Vet. App. 458, 460-61 (1993) (holding a medical opinion based on incorrect factual premise is not probative). In addition, the nexus opinions in the 2005 decision were provided by medical professionals specialized in oncology and molecular biology. In this case, the expertise of the November 2010 medical professional is very unclear. 

The Veteran clearly believes that he was exposed to herbicides during service that caused his right kidney cancer, based on the lay statements of record. In this regard, the Veteran is competent to provide testimony concerning factual matters of which he has first-hand knowledge (that is, experiencing physical symptoms such as pain and weight loss). See Barr v. Nicholson, 21 Vet. App. 303 (2007); Washington v. Nicholson, 19 Vet. App. 362 (2005). Further, under certain circumstances, lay statements may support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability, or symptoms of disability, susceptible of lay observation. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007).

With this said, although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issue in this case, namely, the etiology of kidney cancer, the issue of causation of such an ailment is a determination outside the realm of common knowledge of a lay person. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007) (lay persons not competent to diagnose cancer). Therefore, his lay statements have been reviewed and considered. However, the Veteran lacks the medical training and expertise to provide a complex medical opinion as to the etiology of his right kidney cancer. Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007).

The VA has undergone extensive medical review of this issue, either directly or through support of private medical studies. While, as noted above, the absence of a disease from the presumptive list does not "preclude" the Veteran from otherwise proving that the right kidney cancer resulted from exposure to Agent Orange or otherwise linking his right kidney cancer to service, the fact that it is not on the list, despite many studies and affording Veterans all reasonable doubt to including certain diseases to the list, this fact only provides evidence against this claim. The March 2008 medical opinion submitted by the Veteran is speculative and neither the March 2008 or November 2010 medical opinions are based on well-reasoned rationale, providing more evidence against this claim. There is significant evidence against this claim, including, but not limited to, the service and post-service treatment records. As such, the evidence is against a finding (it is less likely than not) that the Veteran's right kidney cancer was caused by herbicide exposure in service.

In sum, the record does not contain probative medical evidence sufficient to establish a medical nexus between the Veteran's right kidney cancer and his period of active service, to include exposure to herbicides. Coupled with the lack of an in-service diagnosis, the lack of a diagnosis within the first post-service year or evidence of continuity of symptomatology from service discharge, the probative evidence of record does not show that right kidney cancer was incurred in or aggravated by service, to include as the result of herbicide exposure. Accordingly, the claim must be denied.

In light of the above, the Board finds that the probative evidence of record does not demonstrate a nexus between the Veteran's kidney cancer and active duty military service, and it finds that the third Hickson element has not been met. In reaching this determination, the Board acknowledges that VA is statutorily required to resolve the benefit of the doubt in favor of the Veteran when there is an approximate balance of positive and negative evidence regarding the merits of an outstanding issue. That doctrine, however, is not applicable in this case because the preponderance of the evidence is against the Veteran's claim. 38 U.S.C.A. § 5107(b) (West 2002); Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990). The benefit sought on appeal is accordingly denied.

Duties to Notify and Assist

VA has a duty to notify and a duty to assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. §§ 3.159, 3.326(a). In the present case, required notice was provided by letter dated in February 2008. See Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004) (Pelegrini II); Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 486 (2006).
The appellant has not asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2).

The Board is also satisfied VA has made reasonable efforts to obtain relevant records and evidence. Specifically, the information and evidence that has been associated with the claims file includes the Veteran's service treatment records, post-service VA treatment records, and the Veteran's written assertions. No outstanding evidence has been identified that has not otherwise been obtained.

Next, a relevant a VA examination and opinion was obtained in March 2013 pursuant to the Board's December 2012 remand. In sum, the Board finds that the examination report and opinion shows that the examiner considered the evidence of record and the reported history of the Veteran, conducted a thorough kidney conditions (nephrology) examination, noting all findings necessary for proper adjudication of the matter, and explained the rationale for the opinion offered. Hence, the Board finds that the VA examination and medical opinion obtained in this case is adequate. See Barr v. Nicholson, 21 Vet. App. 303 (2007) (VA must provide an examination that is adequate for rating purposes).

Under these circumstances, the Board finds that VA has complied with all duties to notify and assist required under 38 U.S.C.A. § 5103A and 38 C.F.R. § 3.159 and that there has been substantial compliance with its remand. See Dyment v. West, 13 Vet. App. 141, 146-147 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998) where Board's remand instructions were substantially complied with); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (remands which would only result in unnecessarily imposing additional burdens on VA with no benefit flowing to the veteran are to be avoided).


ORDER

Entitlement to service connection for right kidney cancer, as a result of exposure to herbicides is denied. 


REMAND

Subsequent to the Board's December 2012 remand, in a December 2011 rating decision the RO granted service connection for PTSD and assigned a 50 percent disability rating. The Veteran expressed disagreement with the rating assigned in an October 2014. The RO has not yet issued the Veteran a statement of the case (SOC) which addresses this issue.

In such cases, under judicial precedent, the appellate process was initiated by the NOD, and the appellant is entitled to an SOC on this issue. See Manlincon v. West, 12 Vet. App. 238 (1999). Accordingly, the issue of entitlement to an initial rating higher than 50 percent for PTSD must be remanded for additional action.

Accordingly, the case is REMANDED for the following action:

Provide the Veteran with a statement of the case addressing the issue of entitlement to an initial rating higher than 50 percent for PTSD. The Veteran should be advised that a timely substantive appeal will be necessary to perfect the appeal to the Board. The RO should also ensure that all VCAA notice and assistance requirements are satisfied

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).


______________________________________________
JOHN J. CROWLEY
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs